ANNA M. HYSELL (CSBN 232546)
Law Offices of Anna M. Hysell, Inc.
1201 E. Valley Pkwy, Suite 203
Escondido, CA 92027
Tel: +1 760 233 0800
Fax: +1 760 233 0805
anna@annahysell.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A. ANDERSON, an individual;<br>L. SORENSON, an individual;<br>B. TALLEY, an individual; and<br>K. TALLEY, an individual.<br><br>              Plaintiffs,<br><br>        -v-<br><br>THE CITY OF ENCINITAS, a municipal corporation; WOODBRIDGE PACIFIC GROUP, a California limited liability company; WPG DESERT ROSE, a Delaware limited liability company; SCRAMARK, a California limited liability Company; SANTIARA, a California limited liability company; NEW POINTE INVESTMENT 37, a California limited liability company; and DOES 1 - 100,<br><br>         Defendants. | CASE NO.: **'21CV1701 H BLM**<br><br>**COMPLAINT FOR DAMAGES**, **DECLARATORY AND INJUNCTIVE RELIEF**<br><br><br>**Jury Trial Demanded** |

Page 1

## **INTRODUCTION**

1.      In a 2013 speech, former President Obama stated that one of the cornerstones necessary to build up middle-class life in America is the chance for one to buy their own home[1].  A home is more than just a house, it's a source of pride and a source of security.  Hard-working Americans should not have to compete with Corporate Entities and their endless parade of arms-length shell LLC companies to buy an affordable home.  Complex corporate structures should not be treated as back-door VIPs, particularly when it comes to affordable home programs.

2.      Affordable housing is currently one of the hottest topics facing the State of California and the nation.  California's Density Bonus laws were not created for speculation and flipping or to keep low and very low-income families in the continuum of merely renting.  Houses are to be lived in, and to build a life within. *See id.*  The housing market in California has been infected by the shell companies and speculating investors, with many now being denied fair consideration in their application process.  That is what this case is about. Unscrupulous corporate actors' intentional, willful and unlawful conduct to abuse an affordable home program in violation of federal and state laws in the seaside town of Encinitas, California.

---

[1] Press Release, The White House, Remarks by the President on Responsible Homeownership (Aug. 6, 2013), https://obamawhitehouse.archives.gov/the-press-office/2013/08/06/remarks-president-responsible-homeownership.

Developers in Encinitas are putting on "dog and pony shows" to honest applicants in order to meet basic requirements while pre-determining the sale of designated affordable homes in violation of the fair housing rules. And the City of Encinitas is complicit in these housing violations and recklessly failing its duties to administer the programs properly to further the fair housing laws. Affordable homes are being dominated by shell companies owned by building industry insiders, ultimately stealing precious opportunities for deserving families who want a home of their own in their seaside town. Shells are for the Encinitas beaches, not designated affordable homes.

3.    In blatant violation of federal and state anti-discrimination and unfair practice laws, Defendants have engaged in concerted and unlawful actions to discriminate against Plaintiffs in the sale and/or rental of designated affordable homes constructed under California's Density Bonus Law. These private developers and industry insiders have stacked the playing field discriminating and excluding very low-income families from purchasing homes designated as affordable single-family homes in the City of Encinitas. While doing so, the City of Encinitas ("City") has had full knowledge that these developers have been selling the designated affordable homes to private wealthy investors, and blatantly discriminating against selling to these very low-income families. City has a duty to ensure that the sale of affordable homes, under the umbrella of the density bonus laws, are properly

executed within the confines of the federal and state fair housing laws. The City has had full knowledge of this discriminatory and unfair practice for years, has failed to stop it, and instead given its consent and approval.

4.     The four individual Plaintiffs are all members of classes protected by the Fair Housing Act ("FHA"), 42 U.S.C. §3601 *et seq*. – very low-income homebuyers who are single females with children or very low-income homebuyers who are people of color with children.  By this action, Plaintiffs seek to hold the developers, the investor buyers, the City, and any related party, responsible for these actions and harms.

5.     Defendants are real estate developer companies that have engaged in the development of wealthy real estate projects in the City of Encinitas.  They sought under the California Density Bonus laws zoning and planning restriction relief in exchange for the construction of an affordable single-family home that was designated for a very low-income family.  Instead, these developers strategically limited or manipulated advertising of the properties to preclude a large pool of applicants.  They stunted communication with the very low-income applicants during the application process. And instead sold these homes to pre-determined wealthy investors in lieu of the pool of qualified very low-income applicants. All with the full consent of the City of Encinitas.

6.      As detailed more fully below, Defendants' discriminatory and unlawful practices in violation of the FHA have included, among other practices, (1) refusing to sell the properties to qualified very low income families, (2) minimizing all effort to advertise and sell the homes to the protected classes, (3) sold the properties to pre-determined buyers where there was a pre-existing relationship with the Owner and and/or the Owner's affiliates, (4) refuse to rent to a very low-income applicant based on gender, marital and familial status, and (5) secretly sold the property to a wealthy male investor prior to the closing of the application period.

7.      The City has a duty to ensure the Defendants do not engage in any discriminatory or unfair practices in the sale or rental of the affordable homes. However, the City of Encinitas has breached that duty by failing to stop this unlawful practice.  The City has failed to review and challenge the sale of the properties to wealthy non-qualified investors over the very low income applicant pool.  The City has failed to monitor and ensure the homes are being rented to and housing very low-income families. And the city has failed to keep adequate reporting records on a regular basis to ensure compliance.  The City is either complicit in the scheme, or is turning a blind eye.  Either way, it has allowed the unlawful discrimination against some of its most vulnerable residents.

8.      Defendants' conduct has caused profound injury to Plaintiffs.  Plaintiffs equal opportunity to become homeowners in their City have been violated.  They

have been given false hopes of the American dream and been shut out. Repeatedly Plaintiffs have tried to seek these limited opportunities to be able to buy an affordable home in the City of Encinitas. Each with the hope and excitement that they too would be able to buy a place to call their own, to raise their children, and one day leave them a legacy. Instead, each time, Plaintiffs have been excluded and have suffered anxiety, frustration, and humiliation, in addition the violation of their civil rights.

9.     Plaintiffs seek a declaratory judgment, actual, compensatory and punitive damages for Defendants' unlawful behavior. This action is brought under the Fair Housing Act of 1968, as amended, 42 U.S.C. §3601 *et seq.*; the California Fair Housing and Employment Act, California Government Code §§12900-12996; the Unruh Civil Rights Act, California Civil Code §51; California Civil Code §§1708, 1711, 1714, 1770; Cal. Gov't Code 8899.50; the California Unfair Competition Law, California Business and Professions Code §17200 *et seq.*; and California common law.

## **JURISDICTION AND VENUE**

10.     This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343. This action is authorized by 42 U.S.C. §3613. Declaratory relief is authorized by 28 U.S.C. §§2201 and 2202. This Court has supplemental jurisdiction to consider state law claims pursuant to 28 U.S.C. §1367.

11.     Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because (1) at least one Defendant is a resident of this judicial district and all Defendants residents of the State of California, and (2) a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this judicial district.

## THE PARTIES

### I.    Plaintiffs

12.     Plaintiff A. Anderson, age 42, is a 6-year resident of Encinitas, California. She is a single female and the mother of one special-needs child, age 15, who lives with her.

13.     Plaintiff L. Sorensen, age 47, is a native resident of Encinitas, California.  She is a single female and the mother of four (4) children, ages 10, 10, 14, and 15, who live with her.

14.     Plaintiff B. Talley, age 51, is a 35-year resident of Encinitas, California. He is Hispanic, and has two minor children, ages 10 and 13, who live with him and his wife, K. Talley.

15.     Plaintiff K. Talley, age 43, is a 15-year resident of Encinitas, California. She is Asian, a naturalized US citizen and national of Cambodia. She has two minor children, ages 10 and 13, who live with her and her husband, B. Talley.

## II.   **Defendants**

16.     Defendant City of Encinitas, a municipal corporation, is organized and existing under the general laws of the State of California. Defendant is the government body in charge of city planning and the affordable housing programs. They enter into affordable housing regulatory agreements with the developers and subsequent owners. Defendants are responsible for oversight and monitoring of the affordable housing programs within the City of Encinitas, including the sales and rentals of all affordable homes under California's Density Bonus Laws.

17.     Woodbridge Pacific Group, LLC ("WPG") a California limited liability company, is a privately held real estate development company engaged in the acquisition, development, and sale of residential homes. The founding partner of WPG is Todd Cunningham who manages community planning, housing design, project planning and oversees all construction, marketing, and sales functions for its residential development projects. WPG is the developer of a residential community in Encinitas, California, called "Loden at Olivenhain," ("Loden") a luxury home development project. WPG developed the luxury homes and advertised it on their website www.woodbridgepacific.com. Under the density bonus law, it constructed a designated affordable home from the Loden development, with an address of 1317 Portola Road ("1317 Portola"). WPG directly managed the advertisement and sale

of the designated affordable home in violation of the federal and state laws, with the consent of the City of Encinitas.

18.    WPG Desert Rose, LLC ("Desert Rose"), a Delaware limited liability company, is a privately held real estate development company engaged in the acquisition, development, and sale of residential homes. It is a shell company for the Woodbridge Pacific Group, owned by Todd Cunningham, the founding partner of WPG. It was the entity that legally sold the designated affordable home at 1317 Portola on behalf of WPG, to Scramark, LLC in violation of the federal and state laws, with the consent of the City of Encinitas.

19.    Scramark, LLC ("Scramark"), a California limited liability company, is a privately held real estate investment company engaged in the acquisition, rental and sale of residential homes.  It is a single-member organization owned and managed by David Santistevan, a licensed real estate broker in the State of California.  Scramark was formed May 10, 2021. Scramark purchased the designated affordable home in the Loden development from Desert Rose. Scramark entered into an affordable home regulatory agreement with the City of Encinitas on June 21, 2021. It is responsible for the management of the rental of the designated affordable home at 1317 Portola. Defendant Scramark engaged in unlawful practices in violation of the federal and state laws in the rental of the property.

20.     Santiara, LLC ("Santiara"), a California limited liability company, is a privately held real estate investment company engaged in the acquisition, rental and sale of residential homes.  It is a single-member organization owned and managed by David Santistevan, the same owner as Scramark. Santiara was the original company that engaged Desert Rose in the purchase of the designated affordable home in the Loden development before Santistevan formed the shell company Scramark to complete the purchase. Santiara owns two other designated affordable homes in Encinitas and manages the rentals of those properties. Santiara has affordable housing regulatory agreements with the City of Encinitas regarding those two properties.  Defendant Santiara violated federal and state laws in the acquisition process of 1317 Portola resulting in the sale to Scramark.

21.     Defendant New Pointe Investment 37, LLC ("New Pointe"), a California limited liability company, is a privately held real estate investment company engaged in the acquisition, rental and sale of residential homes.  It is a single-member organization owned and managed by Scot C. Sandstrom, founder and President of New Pointe Communities, Inc., a real estate development and building firm operating in San Diego County since 2007.  New Pointe constructed a designated affordable home in Encinitas, California with the physical address of 1412 Mackinnon Avenue ("Mackinnon"). New Pointe entered into an affordable home regulatory agreement with the City of Encinitas on September 7, 2017. It is

responsible for the marketing and sale of the rental of 1412 Mackinnon. New Pointe sold the Mackinnon property in October 2020 to Kenneth Reed, a non-qualified individual, rather than a very low-income household. Reed is a mortgage sales manager at Finance of America Mortgage LLC and owns two other homes in Chula Vista, California and Texas. Defendant New Pointe violated federal and state laws in the sale of Mackinnon.

## I.    The "Loden" Development and 1317 Portola Road

**FACTS**

22.     On March 16, 2008, a master parcel in the Olivenhain community of Encinitas, California was sold and deeded by a private trust to Woodridge Farms Estates, LLC, ("Woodridge Farms") a now-cancelled California limited liability company.  Woodridge Farms applied for and received approval from the City of Encinitas to develop 16 luxury residential homes under California's Density Bonus laws ("DB"). Cal. Gov't. Code § 65915 (2020).

23.     On February 23, 2018, WPG Founder and President Todd Cunningham formed the shell company WPG Desert Rose LLC in the State of Delaware.  Desert Rose, at an unknown time, took over the Loden development project from Woodridge Farms and became the primary developer on the project.

24.     As part of the approval under Woodridge Farms, the developer was to construct one of the homes to be affordable to very low-income households ("VLI").

Woodridge Farms identified the property at 1317 Portola Road in Encinitas to be the designated affordable home.

25.    Woodridge Farms entered into an affordable housing regulatory agreement ("AHR") with the City of Encinitas on March 20, 2018, outlining the terms of the affordable home construction and its sale. The document was recorded with the County of San Diego as Document No. 2018-0121625 on March 27, 2018.

26.    The date is after the formation of the shell company Desert Rose. It is unknown if Desert Rose was deeded the property by Woodridge Farms before or after the date of the AHR between Woodridge Farms and the City of Encinitas.

27.    The AHR outlined a number of covenants and restrictions Woodridge Farms was subject to, including the condition that the home "shall only rent or sell … to a VERY LOW INCOME HOUSEHOLD." *See* Exhibit A, p. 3, §§2.F. and 3.A. The sale of the home also can not be sold to any pre-determined household and any sale must comply with federal and state housing laws. *See id*., p. 3, §3.D. and 3.E.

28.    It is unknown if the City of Encinitas entered into a new and separate AHR with Desert Rose when it became the shell company to construct and sell the development.

29.    Desert Rose constructed 16 single-family homes on the Loden development.  WPG listed itself as the developer of the luxury Loden project on its website www.woodbridgepacific.com. WPG's employees managed the sale of its

homes, including Sara Near, who is the Vice President of Sales Management at WPG.

30.     In the summer 2019, WPG introduced Loden at Olivenhain with an "opening" of an on-site preview gallery on the property premises.  From summer 2019 until 2021, WPG vastly marketed the development in the San Diego community. It issued press releases, listed the houses on online homes sales websites, and ran ads in various newspapers in the area. The ads emphasized that there were a limited number of homes, offered private tours, and marketed an online priority registration for interested buyers at www.lodenolivenhain.com.  No advertisements mentioned the availability of the designated affordable home.  They only mentioned the sale prices of the homes starting at $1.7 million. WPG only advertised the designated affordable home during a minimal two-week period in March 2021.

31.     Enter Plaintiffs. Plaintiffs all live in the City of Encinitas.  Plaintiffs all have minor children that live with them in Encinitas. Plaintiffs all are renters in Encinitas.  Plaintiffs are all very low-income households. Plaintiffs all want to purchase an Encinitas affordable home designated for very low-income households for their family.

32.     Plaintiff B. Talley became aware that there was a designated affordable home going to be for sale in the Loden development at some time in February 2020.

He contacted WPG on behalf of him and his wife, K. Talley, and asked to be added to WPG's list as an interested buyer for 1317 Portola. Plaintiff B. Talley followed up with WPG confirming again he was on the list and to seek updates about the application process. Each time he was told he was on the list and would be notified.

33.    Plaintiffs Anderson and Sorensen became aware some time in August 2020 through word of mouth in the community that there was a designated affordable home going to be for sale in the Loden development.  Both reached out separately to WPG to inquire about the possibility and asked to be added to WPG's list as an interested buyer for 1317 Portola. Plaintiffs Anderson and Sorensen followed up with WPG numerous times, separately, for updates about the application process. Each time they were separately told they were on the list and would be notified.

34.    Defendant WPG's sales staff confirmed to Plaintiffs in 2020 they had been added to the WPG homebuyer interest list for 1317 Portola. Plaintiffs were hopeful this would be their chance to purchase and secure a home in Encinitas.

35.    WPG placed an advertisement in The Coast News, a local newspaper, located in Encinitas, California. According to records obtained through a California Public Records Act request, the advertisement ran in The Coast News on March 5, 2021 and March 12, 2021.  The copy is submitted with this Complaint as Exhibit B.

36.     WPG's advertisement was minimal by design to cast the smallest net of applicants as possible. Rather than use the words "For Sale" the ad stated "Affordable Homeownership Program Available Now." The advertisement failed to list the sales price. Plaintiffs do not believe WPG advertised 1317 Portola with any other method.

37.     On March 6, 2021, Plaintiffs received a mass email from WPG notifying Plaintiffs for the first time that an application period had been opened for interested parties to apply for 1317 Portola. The application period was open from March 6, 2021 to Friday, March 17, 2021, a mere 11 days after the email notification, and only 5 days after the second advertisement ran in The Coast News.

38.     WPG's email notice listed the requirements candidates had to meet. It stated Buyer's annual income could not exceed $46,200 per year to be considered. If the annual income criteria were met, the buyer had to pre-qualify with Jeff Wiersma at US Bank by submitting an online loan application.

39.     Plaintiff B. Talley read the email and saw the income amount WPG listed in their email notification as the first requirement. He and his wife's income was over the stated amount. Disappointed and frustrated, Plaintiffs B. Talley and K. Talley took no action.

40.     Plaintiffs Anderson and Sorensen's income amounts both met the income criteria listed on the email notification. They took immediate actions and

gathered all their required documentation and submitted the application before the 5:00pm deadline on March 17, 2021.

41.    Subsequently, Plaintiffs Anderson and Sorensen received notification from US Bank that they were qualified applicants. They were each separately told by WPG that they were on the list of qualified applicants for the home. Plaintiffs Anderson and Sorensen each were excited and hopeful that this would be their chance to become Encinitas homeowners.

42.    Later, Plaintiff B. Talley realized that WPG had listed the wrong income amount on its email notification.  He contacted WPG and informed them they listed the wrong income amount for who should have qualified to apply. Plaintiff B. Talley asked WPG if he could still apply since he and his family qualified under the correct income amount. WPG denied him the opportunity to apply saying it was past the March 17, 2021 deadline. Plaintiff B. Talley complained to the Development Services Department at the City of Encinitas.

43.    On March 25, 2021, WPG sent an email notification to applicants that the application process had been reopened and extended to April 2, 2021.

44.    Plaintiffs B. Talley and K. Talley submitted a joint application as a married couple with US Bank.  US Bank notified the Talleys they were pre-qualified and that they would be added to the list of qualified applicants. The Talleys were

exuberant that they were able to be considered. They were excited and hopeful that this would be their chance to become Encinitas homeowners.

45.    Plaintiffs all followed up with WPG numerous times, incredibly hopeful that this would be their moment to buy an Encinitas home for their families to live in for a lifetime.

46.    Plaintiff B. Talley followed up with WPG in April 2021 after he and his wife submitted their application. It was not until May 14, 2021, after Plaintiff's inquiry that WPG informed the Talleys the property had been sold to another party. The Talleys were frustrated and devastated.

47.    Plaintiff Sorensen followed up with WPG several times in March and April 2021 about her pending application to see if there were any updates hoping she would be selected.  Later, Sorensen learned the property had been sold to another party.  Sorensen was frustrated and devasted.

48.    Plaintiff Anderson followed up with WPG several times on the status of her application from March until August 2021. WPG last responded to her inquiries on April 13, 2021, confirming Anderson was a qualified applicant on the list and that a decision was pending.  She never received a response from WPG again. It was not until a news article was published on September 15, 2021, in The Coast News that Anderson learned the home was sold. Anderson was frustrated and devastated.

49.    WPG had in fact, already sold the affordable home to a non-qualified real estate investor, David Santistevan, a real estate broker, and the managing member of Santiara, LLC and Scramark, LLC.

50.    WPG submitted a letter to the City of Encinitas on April 15, 2021, to request approval to sell the property to Santiara, LLC as a non-qualified buyer. On April 20, 2021, the City's Principal Planner, Lillian Doherty, approved the sale of 1317 Portola from WPG to Santiara, LLC.

51.    On May 10, 2021, David Santistevan formed and registered Scramark, LLC with the California Secretary of State.

52.    On June 4, 2021, WPG notified the City of Encinitas that Scramark, LLC was now going to be holding title for 1317 Portola.

53.    On June 21, 2021, Scramark, LLC and the City of Encinitas entered into a new affordable housing agreement ("AHR 2"), that was recorded with the County of San Diego on July 1, 2021, as Document No. 2021-0478443.  Under the terms of AHR 2, Scramark is required to rent 1317 Portola to a very low-income household, not rent to a pre-determined household, and must comply with federal and state housing laws.

54.    Upon learning of the sale to a non-qualified buyer through The Coast News article, Plaintfiff Anderson contacted WPG and David Santistevan of Scramark, LLC on September 16, 2021. Plaintiff Anderson emailed WPG and

Santistevan that she was one of the qualified applicants and had learned of the sale to Scramark. She explained she was a single mother with one child and a teacher, and asked for an opportunity to apply to rent the property from them. Anderson gave all her qualifications and made a case for why she should be selected to rent the property.  On September 20, 2021, David Santistevan responded to Anderson and told her that Scramark had already found a qualified larger family that was required. Plaintiff was left devastated and feeling hopeless.

55.    1317 Portola remains vacant and unoccupied as of the date of this complaint.

56.    Plaintiffs allege WPG, Desert Rose, Santiara, and Scramark violated federal and state laws in the marketing and sales of 1317 Portola and the City of Encinitas failed its duty to Plaintiffs by approving the sale.

## II.    The "Mackinnon" Property at 1412 Mackinnon Avenue

57.    In 2016, the City of Encinitas approved a residential development project under the California Density Bonus laws for a parcel located on Mackinnon Avenue in the Cardiff community of Encinitas, California.  The project was developed by RTA Cardiff, LLC ("RTA Cardiff"), a Delaware limited liability company.  As part of the City approval, RTA Cardiff was to construct one single-family residential home and it was designated to be an affordable home for a very low-income household.

58.    At some time, RTA Cardiff transferred the development parcel to New Pointe Investment 37, LLC, a single-member company managed by its sole member Scot Sandstrom, who is also the founder and President of New Pointe Communities, Inc., a real estate development and construction firm.  According to California's Secretary of State business search system, Mr. Sandstrom has formed and registered around 50 shell companies, all engaged in real estate investment. He is the former president of the San Diego chapter of the Building Industry of America. New Pointe became the developer who constructed the Mackinnon project.

59.    On September 7, 2017, New Pointe entered into an Affordable Housing Agreement ("AHR 3") with the City of Encinitas regarding the designated affordable home to be sold of the development project, which was recorded with the County of San Diego on October 17, 2017 as Document No. 2017-0482128.  The address of the designated home was 1412 Mackinnon Avenue.

60.    AHR 3 outlined a number of covenants and restrictions New Pointe was subject to, including, the home was to be sold or rented only to very low-income households." *See* Exhibit C, p. 2, §3.F.  The sale of the home also cannot be sold to any pre-determined household and any sale must comply with federal and state housing laws. *See id.*, p. 3, §§3.D. and 3.E.

61.    The construction was completed in 2019. The homes, with the exception of the designated affordable home, all sold for over $1 million.

62.    Enter Plaintiffs.   Once again, Plaintiffs became aware of the Mackinnon development project at differing times and became aware that one of the homes was a designated affordable house.  Plaintiffs took action to see if they could have the chance to apply to purchase the home.

63.    On July 7, 2019, Plaintiff B. Talley reached out to New Pointe's management on behalf of himself and wife K. Talley, to inquire about being added to the affordable home interested buyer list.  He received no response and never became aware of when the home was available for buyer applications.

64.    On September 22, 2020, 1412 Mackinnon was listed for sale on the multiple listing service ("mls"). *See* Exhibit D.  According to the mls, the sale price was listed as $137,993.00.  The listing agent was Mark Marquez ("Marquez")with Pacific Sotheby's International Realty.

65.    1412   Mackinnon   was   also   advertised   on   a   website www.1412mackinnon.com.  It is unknown how long the website was active.

66.    Plaintiff Sorensen learned of the sale listing through a friend.   On September 24, 2020, Sorensen contacted Marquez's office to inquire about the application process.   On September 25, 2020, Marquez's office responded to Sorensen confirming the process.  The same day Sorensen submitted to Marquez's office an application to purchase the home for the listed price.  On September 26, 2020, Sorensen received confirmation she had been qualified as an applicant.

Sorensen was excited and hopeful that this would be her chance to buy a home for her family in her native Encinitas.

67.    On October 13, 2020, Marquez's office informed Sorensen 1412 Mackinnon was sold to another buyer and Sorensen learned that the buyer was a non-qualified buyer.  Sorensen was devastated, frustrated, and felt hopeless.

68.    The mls history shows the property was under contract on September 26, 2020. *See id*. On October 7, 2020, the mls status of the property was changed to sale pending. *See id*.  On October 21, 2020, the mls status changed again to closed. *See id*.

69.    On October 6, 2020, New Pointe sold 1412 Mackinnon to Kenneth Reed ("Reed"), a non-qualified individual, who is a sales manager at Finance of America Mortgage LLC.   New Pointe discriminated against Plaintiffs in the sale process of Mackinnon.

70.    The property was sold to Reed, as a married man as his sole and separate property. On October 15, 2020, Reed entered into an affordable housing agreement with the City of Encinitas, which was recorded at the County of San Diego on October 20, 2020, as Document No. 2020-0636976.

71.    Later, Reed conveyed an interspousal transfer to his wife and the property is currently owned jointly by Reed and his wife as Joint Tenants.

72.    Plaintiffs allege New Pointe violated federal and state laws in the marketing and sale of 1412 Mackinnon and the City of Encinitas failed its duty to Plaintiffs by approving the sale.

## LEGAL CLAIMS

**I.    First Cause of Action – Violations of the Fair Housing Act**

**(42 U.S.C. §§ 3601-3619; 24 C.F.R. §§ 100.60-100.85)**

73.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

74.    The Individual Plaintiffs are all members of protected classes under the FHA.  Plaintiffs Anderson and Sorensen are each very low-income homebuyers as single women with minor children.  Plaintiff Anderson's son is a special needs child. Plaintiffs Talley and Talley are each very low-income homebuyers as people of color. B. Talley is Latino and K. Talley is Asian.

75.    Plaintiffs allege Defendants' unlawful discriminatory conduct in the marketing and sales of the affordable homes in Encinitas has had a disparate impact on Plaintiffs.

76.    Defendants WPG, Desert Rose, Santiara, Scramark, and New Pointe refused to sell to Plaintiffs after the making of a bona fide offer, and refused to negotiate for the sale or rental of the affordable homes because of their sex, marital and/or familial status, race and color in violation of 42 U.S.C. §3604(a).  Defendants'

conduct was intentional, willful, and made in reckless disregard of the known rights of others.

77.     Defendants WPG and Desert Rose created vague non-informative advertisements to cause as minimal a pool of applicants as possible for the 1317 Portola property with all intention to limit and discriminate in violation of 42 U.S.C. §3604(c).   Defendants' conduct was intentional, willful, and made in reckless disregard of the known rights of others.

78.     Defendant Scramark represented to Plaintiff Anderson that because of her familial status the 1317 Portola property was not available for rent to her in violation  42 U.S.C. §3604(d).   Defendant Scramark's discriminatory acts against Plaintiff Anderson in the rental of the property resulted in a disparate impact as her special-needs son intended to reside in the unit after it was rented. This is in violation of 42 U.S.C. §3604(f)(1)(b). Defendants' conduct was intentional, willful, and made in reckless disregard of the known rights of others.

79.     Defendants' practices to manipulate the density bonus affordable housing program have had a disproportionately adverse effect on protected classes, and are not otherwise justified by a legitimate rationale, in contravention of 42 U.S.C. § 3604 and 3605.   *See Texas Dep't of Hour. & Cmty. Affairs v. Inclusive Communities*, 135 S. Ct. 2507, 2521 (2015) (noting that "[r]ecognition of disparate impact claims is consistent with the [Fair Housing Act's] central purpose" as it "was

enacted to eradicate discriminatory practices within a sector of our Nation's economy") (citations omitted).

80.     As a recipient of federal funds to administer housing and community development programs, the City of Encinitas has a statutory duty to affirmatively further fair housing. 42 U.S.C. §3616a; Cal. Govt. Code §8899.50. The City has a duty to "administer its programs and activities relating to housing and community development in a manner to affirmatively further fair housing, and take no action that is materially inconsistent with its obligation to affirmatively further fair housing." Cal. Gov. Code, §8899.50(b).   Here, the City failed to administer its density bonus affordable housing program and activities in its dealing with its co-Defendants, causing a disparate impact on Plaintiffs in violation of 42 U.S.C. §§3604 and 3605.

## II.     <u>Second Cause of Action – Violations of the California Fair Employment and Housing Act</u>

**(Cal. Gov't Code §§ 12900-12996; Cal. Civ. Code §1711)**

81.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

82.     Based on Defendants' actions herein alleged, Plaintiffs allege Defendants' discriminated against Plaintiffs and their conduct had a disparate impact

on Plaintiffs' who are protected classes in contravention to Cal. Gov't Code §§12955 & 12955.8(a).

83.    Based on the City's actions herein alleged, Plaintiffs allege the City of Encinitas was complicit and allowed discriminatory practices in the affordable housing program in blatant violation of Cal. Govt. Code §8899.50.

**III.    Third Cause of Action – Violations of Unruh Civil Rights Act**

**(Cal. Civ. Code §§ 51)**

84.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

85.    Plaintiffs are protected classes under the Unruh Civil Rights Act. Plaintiffs Anderson and Sorensen are very low-income homebuyers who are single mothers of minor children. Plaintiffs Talley and Talley are very low-income homebuyers who are Latino and Asian, respectively.

86.    Defendants' injured Plaintiffs in violation of the Unruh Civil Rights Act, Cal. Civ. Code §51. Specifically, Defendants denied Plaintiffs full and equal accommodations, advantages, facilities, privileges, or services by acting failing to act in good faith in the marketing, sale and management of the affordable homes in Encinitas. Plaintiffs have suffered harm, and Defendants' conduct was a substantial factor in causing the harm suffered by Plaintiffs.

### IV.  **Fourth Cause of Action – Violations of Unfair Competition**

### **(Cal. Bus. & Prof. Code §§ 17200-17210; Cal. Civ. Code §§1770)**

87.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

88.    Defendants have engaged in unlawful and unfair business practices by employing intentional and willful discriminatory conduct in an effort to exclude Plaintiffs from buying designated affordable homes.  Defendants conduct in the advertisement and management of the applications process for these homes was not in good faith.

89.    Defendant Scramark engaged in further unfair business practices by refusing to negotiate in the rental of 1317 Portola to Plaintiff Anderson and discriminating against her based on her familial status.

90.    Defendant City of Encinitas had full knowledge that its co-Defendants were excluding very low-income households in favor of non-qualified real estate investors.   The City has a pattern and practice of approving these type of arrangements for years.

91.    Defendants' conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the harm to Plaintiffs outweighs any conceivable utility from Defendants' actions.

92.    Defendants' unlawful and unfair business practices, including discriminating against Plaintiffs, have caused economic injuries to Plaintiffs, including requiring them to go to great lengths to find information about applying for the affordable homes, requiring them to scramble and take time off work to rapidly gather requisite documents and information so they can timely submit an application during a minute time frame, and to be excluded from the Encinitas residential home market.

## V.    Fifth Cause of Action – Claim for Negligence

### (Cal. Civ. Code §§ 1708 and 1714)

93.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

94.    Defendants injured the Plaintiffs by want of ordinary care or skill in the marketing and sale of the affordable homes in violation of Cal. Civ. Code §§1708 and 1714.

95.    Defendants were negligent because, as stated above, (1) Defendants violated the federal Fair Housing Act, the California Fair Employment and Housing Act, and the Unruh Civil Rights Act, Cal. Civ. Code §51; (2) Defendants statutory violations were a substantial factor in bringing about the harm suffered by Plaintiffs, including both economic loss and emotional distress; (3) the FHA, FEHA, and Unruh Civil Rights Act were intended to prevent actions like those of Defendants;

and (4) the FHA, FEHA and the Unruh Civil Rights Act were intended to protect persons like Plaintiffs.

96.    Defendants also were negligent because as stated above, (1) they failed to exercise ordinary skill or care to prevent or remedy the discriminatory and unfair practices required in the course of their business, and (2) Defendants' failure to exercise ordinary skill or care was a substantial factor in bringing about the harm suffered by Plaintiffs, including both economic loss and emotional distress.

## **RELIEF SOUGHT**

97.    Plaintiffs seek the following from this Court:

   a.  The issuance of a declaratory judgment in favor of Plaintiffs;

   b.  Awarding actual and compensatory damages Plaintiffs incurred as a result of Defendants' actions;

   c.  Awarding punitive and exemplary damages to Plaintiffs pursuant to 42 U.S.C.§3613(c) and Cal. Civ. Code §3294, and any other relevant law authorizing such relief;

   d.  Awarding costs and attorney fees to Plaintiffs pursuant to 42 U.S.C. §3613, Cal. Civ. Proc. Code §1021.5, Cal. Civ. Code §§1717, 1942.5(h), and any other relevant law authorizing such relief; and

   e.  Granting such further relief as the Court may deem just.

## __JURY TRIAL DEMANDED__

98.    Plaintiffs demand a jury on all issues so triable.


Dated: September 30, 2021                    Respectfully Submitted,

                              By:    s/ Anna M. Hysell
                                     Anna M. Hysell
                                     Attorney for Plaintiffs