ANNA M. HYSELL (CSBN 232546)
Law Offices of Anna M. Hysell, Inc.
1201 E. Valley Pkwy, Suite 203
Escondido, CA 92027
Tel: +1 760 233 0800
Fax: +1 760 233 0805
anna@annahysell.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

A. ANDERSON, an individual;
L. SORENSON, an individual;
B. TALLEY, an individual; and
K. TALLEY, an individual.

                       Plaintiffs,

              -v-

THE CITY OF ENCINITAS, a municipal
corporation; WOODBRIDGE PACIFIC
GROUP, a California limited liability
company; WPG DESERT ROSE, a
Delaware limited liability company;
SCRAMARK, a California limited liability
Company; SANTIARA, a California
limited liability company;
DAVID SANTISTEVAN, an individual;
CIARA LAYNE-TRUJILLO, an individual
NEW POINTE INVESTMENT 37, a
California limited liability company;
FINANCE OF AMERICA MORTGAGE,
a limited liability company;
VICTOR SPAYDE, an individual;
KENNETH REED, an individual;
MARCOR VENTURES, a corporation;

CASE NO.: 21-cv-01701-H-BLM

**SECOND AMENDED
COMPLAINT FOR
DAMAGES,
DECLARATORY AND
INJUNCTIVE RELIEF**

**Jury Trial Demanded**

REAL ESTATE OF THE PACIFIC,           )
a corporation;                        )
MARK MARQUEZ, an individual,          )
DOES 1 - 100,                         )
                    Defendants.       )
                                      )

## **INTRODUCTION**

1.    In a 2013 speech, former President Obama stated that one of the cornerstones necessary to build up middle-class life in America is the chance for one to buy their own home[1].  A home is more than just a house, it's a source of pride and a source of security.

2.    Hard-working Americans should not have to compete with Corporate Entities and their endless parade of arms-length shell LLC companies to buy an affordable home.  Complex corporate structures should not be treated as back-door VIPs, particularly when it comes to affordable home programs.

3.    Affordable housing is currently one of the hottest topics facing the State of California and the nation. In an effort to increase affordable housing capacities, the California Legislature enacted the "Density Bonus" law, a bill to allow developers to have zoning restrictions waived in exchange for the construction of affordable homes for low-income and very low-income households. Local municipalities, including the City of Encinitas, adopted local ordinances to execute the California legislatures intent.  Local governments were supposed to take action to ensure the expansion of housing opportunities for the lower income households. California's Density Bonus laws were not created for speculation and flipping or to

---

[1] Press Release, The White House, Remarks by the President on Responsible Homeownership (Aug. 6, 2013), https://obamawhitehouse.archives.gov/the-press-office/2013/08/06/remarks-president-responsible-homeownership.

keep low and very low-income families in the continuum of merely renting. The affordable housing programs creating single-family homeownership opportunities are to address the historic inability for these groups to enter the market and build generational wealth. Houses are to be lived in, and to build a life within. *See id.*

4.    Unfortunately, the housing market has been infected by the shell companies and speculating investors. One out of every six homes in the US purchased in the second quarter of 2021 was acquired by investors, and reports indicate that in the San Diego metro area, the number of homes purchased by investors in the second quarter of 2021 was 18.5%[2]. For Encinitas, the number of affordable homes owned by investors is a whopping 73%, an unacceptable high figure given the scarcity of such single family home opportunities for the target group.    This is a major problem to getting lower-income families into homeownership.  "Large investor purchases of single-family homes and conversion into rental properties speeds the transition of neighborhoods from homeownership to rental and drives up home prices for lower cost homes, making it harder for aspiring first-time and first-generation home buyers, among others, to buy a home." *See* Press Release, The White House, FACT SHEET: Biden-Harris Administration Announces Immediate Steps to Increase Affordable Housing Supply (Sept. 1, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/09/01/fact-

---

[2] *See* https://www.redfin.com/news/investor-home-purchases-q2-2021/

sheet-biden-harris-administration-announces-immediate-steps-to-increase-affordable-housing-supply.

5.    In fact, in Encinitas, California, the median home sale listing price in October 2021 was $1.8 million[3].  To very low-income families, homeownership is a mere pipe dream without affordable home programs like the density bonus programs.  For families like Plaintiffs to become homeowners in their hometown of Encinitas, they have to rely only on opportunities afforded through affordable home sales programs.

6.    However, the City of Encinitas has concocted a scheme that allows developers to sell affordable homes to their investor friends rather than low-income families.  The City has failed to provide oversight and compliance with these programs which has led to low-income families being denied fair consideration in their application process.  That is what this case is about. Unscrupulous corporate actors' intentional, willful and unlawful conduct to abuse an affordable home program in violation of federal and state laws in the seaside town of Encinitas, California.

7.    Developers in Encinitas are putting on "dog and pony shows" to honest applicants in order to meet basic requirements while pre-determining the sale of designated affordable homes in violation of the fair housing rules. And the City of

---

[3] *See* https://www.realtor.com/realestateandhomes-search/Encinitas_CA/overview

Encinitas is complicit in these housing violations and recklessly failing its duties to administer the programs properly to further the fair housing laws. Affordable homes are being dominated by shell companies owned by building industry insiders, ultimately stealing precious opportunities for deserving families who want a home of their own in their seaside town. Shells are for the Encinitas beaches, not designated affordable homes.

8.      In blatant violation of federal and state anti-discrimination and unfair practice laws, Defendants have engaged in concerted and unlawful actions to discriminate against Plaintiffs in the sale and/or rental of designated affordable homes constructed under California's Density Bonus Law. These private developers and industry insiders have stacked the playing field discriminating and excluding very low-income families from purchasing homes designated as "for-sale" affordable single-family homes in the City of Encinitas. The City of Encinitas ("City") has not only had full knowledge that these developers have been selling the designated affordable homes to private wealthy investors, blatantly discriminating against selling to these protected classes, but the City themselves worked with the developers to create the vehicle for these developers to do so the way they crafted their affordable housing regulatory agreements. The City has a duty to ensure that the sale of affordable homes, under the umbrella of the density bonus laws, are properly executed within the confines of the federal and state fair housing laws. The City has created an ability for the developers to engage in this discriminatory and

unfair practice for years, has had full knowledge they have been doing so, and has failed to stop it, and instead given its consent and approval.

9.    The four individual Plaintiffs are all members of classes protected by the Fair Housing Act ("FHA"), 42 U.S.C. §3601 *et seq.* – very low-income homebuyers who are single females with children and very low-income homebuyers who are people of color with children.  By this action, Plaintiffs seek to hold the developers, the investor buyers, the City, and any related party, responsible for these actions and harms.

10.    Defendants are real estate developer companies and their agents that have engaged in the development of wealthy real estate projects in the City of Encinitas.  They sought under the California Density Bonus laws zoning and planning restriction relief in exchange for the construction of an affordable single-family home that was designated for a very low-income family.  Instead, these developers strategically limited or manipulated advertising of the properties to preclude a large pool of applicants. They stunted communication with the very low-income applicants during the application process. And they sold these homes to pre-determined wealthy investors they or their agents had pre-existing relationships with, based on different sales terms than the protected classes. All by utilizing the discriminatory vehicle created by the City of Encinitas and with their consent.

11.    As detailed more fully below, Defendants' discriminatory and unlawful practices in violation of the FHA have included, among other practices, (1) refusing

to sell the properties to qualified very low income families that are all within protected classes, (2) minimizing all effort to advertise and sell the homes to the protected classes, (3) failure to qualify applicants as required under the Equal Credit Opportunity Act, (4) sold the properties with different sales terms to pre-determined buyers where there was a pre-existing relationship with the Owner and and/or the Owner's affiliates, (5) refused to rent to a very low-income applicant based on gender, marital and familial status, and (6) sold the properties to wealthy, married, male investors discriminating against protected classes.

12.     The City has a duty to ensure the Defendants do not engage in any discriminatory or unfair practices in the sale or rental of the affordable homes. However, the City of Encinitas has breached that duty by not only failing to stop this unlawful practice, but creating the mechanism to allow them to do so.  The City has failed to review and challenge the sale of the properties to wealthy non-qualified investors over the protected class. The City has failed to monitor and ensure the homes are being rented to and housing the protected class. And the city has failed to keep adequate reporting records on a regular basis to ensure compliance.  The City is either complicit in the scheme, or is turning a blind eye.  Either way, it has allowed the unlawful discrimination against some of its most vulnerable residents.

13.     The City has not only failed its duties to ensure oversight in the sale of the affordable homes, but they have created an unlawful scheme through their affordable home regulatory agreements that allows for the discriminatory conduct.

While asserting they are doing so under the color of the California density bonus laws, they are violating Plaintiffs federal civil rights, and allowing these developers to scam the system injuring Plaintiffs.

14.    Defendants' conduct has caused profound injury to Plaintiffs. Plaintiffs' equal opportunity to become homeowners in their City have been violated.  They have been given false hopes of the American dream and been shut out on prohibited grounds.  Repeatedly Plaintiffs have tried to seek these limited opportunities to be able to buy an affordable home in the City of Encinitas.  Each with the hope and excitement that they too would be able to buy a place to call their own, to raise their children, and one day leave them a legacy.  Instead, each time, Plaintiffs have been excluded and have suffered anxiety, frustration, and humiliation, in addition the violation of their civil rights.

15.    Plaintiffs have been significantly damaged by Defendants acts.  In addition to the violation of their civil rights, Plaintiffs have suffered tangible damages, including but not limited to, income lost during the time spent applying for the homes when the homes were not available to them, and higher cost of alternative housing and improvements caused by housing discrimination. Plaintiffs suffered emotional distress damages, including, but not limited to anxiety, loss of sleep, humiliation, depression, and other effects of the discriminatory act. Defendants actions also caused Plaintiffs to suffer lost housing opportunity damages, including but not limited to improved living conditions, better educational

opportunities, the ability to own a home, the ability to build equity rather than pay rents, mortgage-interest tax benefits, the probability of becoming a victim of or witness to violent crime, and, cumulatively, the possibility of escaping poverty

16.   Plaintiffs seek a declaratory judgment, actual, compensatory and punitive damages for Defendants' unlawful behavior.  This action is brought under the Fair Housing Act of 1968, as amended, 42 U.S.C. §3601 *et seq*.; Section 1983, 42 USC 1983; the California Fair Housing and Employment Act, California Government Code §§12900-12996; the Unruh Civil Rights Act, California Civil Code §§51 and 52; the Equal Credit Opportunity Act, 15 USC §1691; Cal. Gov't Code 8899.50; the California Unfair Competition Laws, pursuant to Cal. Bus. and Prof. Code §17200 *et seq*.; California Finance Code §§22161 and California Civil Code §§1088, 1708, 1709; 1710 1711, 1750 *et seq*, 1770, 2079.16;  and California common law.

## JURISDICTION AND VENUE

17.   This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343. This action is authorized by 42 U.S.C. §3613.  Declaratory relief is authorized by 28 U.S.C. §§2201 and 2202.  This Court has supplemental jurisdiction to consider state law claims pursuant to 28 U.S.C. §1367.

18.   Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because (1) at least one Defendant is a resident of this judicial district and all Defendants residents of the State of California, and (2) a substantial part of the events

or omissions giving rise to the claims in this Complaint occurred in this judicial district.

## **THE PARTIES**

### I.    **Plaintiffs**

19.    Plaintiff A. Anderson, age 42, is a 6-year resident of Encinitas, California. She is a single female and the mother of one special-needs child, age 15, who lives with her.

20.    Plaintiff L. Sorensen, age 47, is a native resident of Encinitas, California.  She is a single Asian female and the mother of four (4) children, ages 10, 10, 14, and 15, who live with her.

21.    Plaintiff B. Talley, age 51, is a 35-year resident of Encinitas, California. He is Hispanic, and has two minor children, ages 10 and 13, who live with him and his wife, K. Talley.

22.    Plaintiff K. Talley, age 43, is a 15-year resident of Encinitas, California. She is Asian, a naturalized US citizen and national of Cambodia. She has two minor children, ages 10 and 13, who live with her and her husband, B. Talley.

### II.    **Defendants**

23.    Defendant City of Encinitas, a municipal corporation, is organized and existing under the general laws of the State of California. Defendant is the government body in charge of city planning and the affordable housing programs. They wrote affordable housing regulatory agreements that allowed discriminatory

conduct and entered into such agreements with the developers and subsequent owners. Defendants are responsible for oversight and monitoring of the affordable housing programs within the City of Encinitas, including the sales and rentals of all affordable homes under California's Density Bonus Laws. Defendants are charged with a statutory duty to affirmatively further fair housing and violating this duty.

24.     Woodbridge Pacific Group, LLC ("WPG") a California limited liability company, is a privately held real estate development company engaged in the acquisition, development, and sale of residential homes. The founding partner of WPG is Todd Cunningham who manages community planning, housing design, project planning and oversees all construction, marketing, and sales functions for its residential development projects. WPG is the developer of a residential community in Encinitas, California, called "Loden at Olivenhain," ("Loden") a luxury home development project. WPG developed the luxury homes and advertised it on their website www.woodbridgepacific.com.  Under the density bonus law, it constructed a designated affordable home from the Loden development, with an address of 1317 Portola Road ("1317 Portola"). WPG directly managed the advertisement and sale of the designated affordable home in violation of the federal and state laws, with the consent of the City of Encinitas.

25.     WPG Desert Rose, LLC ("Desert Rose"), a Delaware limited liability company, is a privately held real estate development company engaged in the acquisition, development, and sale of residential homes. It is a shell company for the

Woodbridge Pacific Group, owned by Todd Cunningham, the founding partner of WPG. It was the entity that legally sold the designated affordable home at 1317 Portola on behalf of WPG, to Scramark, LLC in violation of the federal and state laws, with the consent of the City of Encinitas.

26.     Scramark, LLC ("Scramark"), a California limited liability company, is a privately held real estate investment company engaged in the acquisition, rental and sale of residential homes.  It is a single-member organization owned and managed by David Santistevan, a licensed real estate broker in the State of California.  Scramark was formed May 10, 2021. Scramark purchased the designated affordable home in the Loden development from Desert Rose. Scramark entered into an affordable home regulatory agreement with the City of Encinitas on June 21, 2021. It is responsible for the management of the rental of the designated affordable home at 1317 Portola. Defendant Scramark engaged in unlawful practices in violation of the federal and state laws in the rental of the property.

27.     Santiara, LLC ("Santiara"), a California limited liability company, is a privately held real estate investment company engaged in the acquisition, rental and sale of residential homes.  It is a single-member organization owned and managed by David Santistevan, the same owner as Scramark. Santiara was the original company that engaged Desert Rose in the purchase of the designated affordable home in the Loden development before Santistevan formed the shell company Scramark to complete the purchase. Santiara owns two other designated affordable

homes in Encinitas and manages the rentals of those properties. Santiara has affordable housing regulatory agreements with the City of Encinitas regarding those two properties. Defendant Santiara violated federal and state laws in the acquisition process of 1317 Portola resulting in the sale to Scramark.

28.    David Santistevan is a private individual who resides in San Diego County. He is a California licensed real estate broker, who is the sole member of both Scramark LLC and Santiara LLC. Mr. Santistevan created the shell companies as an alter ego to shield him of personal liability for his unlawful conduct. Mr. Santistevan is the sole member of both Santiara LLC and Scramark LLC. He is the sole person in control of both entities. Both LLCs operate out of Mr. Santistevan's commercial real estate office, Collier's International, where he personally works as a commercial real estate broker. The transactions that took place regarding the sale and rental of 1317 Portola were done by Mr. Santistevan himself. It is believed Scramark and Santiara were not properly capitalized and personal funds by Mr. Santistevan were transferred to the entities for the transaction. Mr. Santistevan refused to rent the property to Plaintiff Anderson due to her gender, marital and familial status. Defendant Santistevan violated federal and state laws in the acquisition of 1317 Portola and the rental of the property to Anderson.

29.    Defendant Ciara Layne-Trujillo, is a private individual who resides in San Diego County. Layne-Trujillo is a California licensed real estate broker, and the sole member owner of Trumen LLC, a shell real estate investment company. Ms.

Layne-Trujillo works with David Santistevan on his commercial real estate team at Collier's International at the same La Jolla office. *See* Exhibit A. Ms. Layne-Trujillo had a preexisting business relationship with WPG and Desert Rose and conspired with Santistevan to purchase the affordable home at 1317 Portola to house Layne-Trujillo's family/friends in violation of federal and state laws.

30.    Defendant New Pointe Investment 37, LLC ("New Pointe"), a California limited liability company, is a privately held real estate investment company engaged in the acquisition, rental and sale of residential homes.  It is a single-member organization owned and managed by Scot C. Sandstrom, founder and President of New Pointe Communities, Inc., a real estate development and building firm operating in San Diego County since 2007.   New Pointe constructed a designated affordable home in Encinitas, California with the physical address of 1412 Mackinnon Avenue ("Mackinnon"). New Pointe entered into an affordable home regulatory agreement with the City of Encinitas on September 7, 2017. It is responsible for the marketing and sale of the rental of 1412 Mackinnon. New Pointe sold the Mackinnon property in October 2020 to Kenneth Reed, a non-qualified individual and discriminated against Plaintiffs in the sale of the property. Defendant New Pointe violated federal and state laws in the sale of Mackinnon.

31.    Defendant Marcor Ventures, Inc., ("Marcor") a California corporation, is a privately held real estate sales company engaged in the appraisal, marketing and sales of residential homes and developments in San Diego, California.  It is owned

1
2
3
4
5
6
7
8

and managed by Mark Marquez, a licensed real estate broker in the State of California.  Marcor was the listing agent for the sale of the Mackinnon development for New Pointe, including the designated affordable home. On behalf of New Pointe, Marcor was responsible for the marketing and sales of the affordable home at 1412 Mackinnon.  Defendant Marcor and its agents engaged in unlawful practices in violation of the federal and state laws in the marketing and sale of the property.

9
10
11
12
13
14
15
16
17
18
19
20
21

32.    Mark Marquez is a private individual who resides in San Diego County. He is a California licensed real estate broker, who is the owner of Marcor Ventures, Inc.  At the time of the sale of 1412 Mackinnon, Mr. Marquez's real estate brokerage firm, Marcor was a broker associate of Real Estate of the Pacific, Inc., otherwise known as Pacific Sotheby's Real Estate located in Rancho Bernardo, California.  Mr. Marquez was in charge of the marketing and sales of the affordable home at 1412 Mackinnon on behalf of New Pointe 37. Mr. Marquez had a pre-existing relationship with the selected buyer Kenneth Reed violated federal and state laws in the marketing and sale of 1412 Mackinnon.

22
23
24
25
26
27
28

33.    Defendant Real Estate of the Pacific, a California corporation is a real estate brokerage firm.  It was the parent brokerage firm of Marcor Ventures, Inc. and Mark Marquez.  It is located at 16745 W Bernardo Drive, in San Diego, California. It is the real estate firm that employed Defendant Marquez who acted contrary to federal and state housing laws in the marketing and sale of 1412 Mackinnon Avenue.

34.     Victor Spayde is a private individual who is a mortgage loan originator employed with Finance of America Mortgage, LLC. *See* Exhibit B. Mr. Spayde was the preferred lender charged with qualifying buyer applicants in the sale of 1412 Mackinnon Avenue. *See* Exhibit C. Mr. Spayde is charged with discriminating against Plaintiff Sorenson in the qualification process of the purchase application to enable his co-worker Kenneth Reed, a male investor to purchase the designated affordable home. Mr. Spayde failed to properly comply with the federal housing and credit laws in the qualification process of the mortgage/lending of 1412 Mackinnon Avenue. Mr. Spayde also violated California's unfair competition and California financing laws.

35.     Kenneth Reed is a private individual who unlawfully purchased the designated affordable home at 1412 Mackinnon Avenue. Mr. Reed is also a mortgage loan originator who is employed at Finance America Mortgage, LLC in San Diego, California in the same office as Defendant Victor Spayde. *See* Exhibit D. Defendant Reed engaged in unlawful, unfair practices in violation of the federal and state laws in the sale process of the Mackinnon property.

36.     Finance of America Mortgage, ("Finance of America"), a Delaware limited liability company, is a privately held loan originator company that is engaged in the lending and servicing of mortgage loans in real estate transactions. Its corporate headquarters is located at 1 West Elm, in Conshohocken, Pennsylvania. Their San Diego branch is located at 2365 Northside Drive, Suite 150 in San Diego,

California. Finance of America is the mortgage lending company that employs Defendants Spayde and Reed who acted contrary to federal and state housing and credit laws in the sale of 1412 Mackinnon Avenue.

## FACTS

### I.    California's Density Bonus Laws

37.    For more than forty years, California's Density Bonus Law (Cal. Government Code Section 65915 *et seq.*) has been a mechanism to encourage developers to incorporate affordable units within a residential project in exchange for density bonuses and relief from other base development standards. In an attempt to increase the amount of affordable units available throughout the state, the Density Bonus Law allows developers to obtain more favorable local development requirements in exchange for offering to build or donate land for affordable units. The Density Bonus Law (found in California Government Code Sections 65915 – 65918) provides developers with powerful tools to encourage the development of affordable housing, including up to a 50% increase in project densities for most projects, depending on the amount of affordable housing provided, and an 80% increase in density for projects which are completely affordable. The Density Bonus Law is about more than the density bonus itself, however. It is actually a larger package of incentives intended to help make the development of affordable and housing economically feasible. Other tools include reduced parking requirements,

and incentives and concessions such as reduced setback and minimum square footage requirements.

38.     The intent of the density bonus laws are explicitly clear and codified at Cal. Gov't. Code §65917. In enacting the legislation "it is the intent of the Legislature that the density bonus or other incentives offered by the city, county, or city and county pursuant to this chapter shall contribute significantly to the economic feasibility of lower income housing in proposed housing developments." Cal. Govt. Code §65917 (2021).  California's governing body made it very clear that the density bonus law was one of many tools created to adequately address the policies and needs of affordable housing. Cal Govt. Code §§65580-65582.1 (2021). The intent of the Legislature is not to enrich developers and their friends, but to enable low-income and very low-income households the feasibility of becoming homeowners in this State of California.

## II.     The Fair Housing Act & California's FEHA

39.     While the California density bonus laws relate to zoning and planning restrictions within local municipalities, the sale of the housing developed under the density bonus laws remain subject to federal and state fair housing laws. California's density bonus law does not in any way exempt any party from the fair housing laws. Rather, developers, local municipalities, and all parties related to real estate transactions must be in compliance with Title VII of the Civil Rights Act of 1968 and the California Fair Employment and Housing Act ("FEHA").

40.    The Fair Housing Act, 42 USC §3601 et seq., makes it unlawful to (1) deny to sell or rent to any person because of race, religion, sex, national origin, familial status, or disability; (2) discriminate against any person in the terms, conditions or privileges of the sale or rental of a home because of one of the protected grounds; (3) to print, publish or cause to be printed/published an advertisement or statement with respect to the sale or rental of a home that indicates a preference, limitation or discrimination based on a protected ground; (4) to represent to any person because of a protected ground that a home is not available for sale or rental when the home is in fact available. 42 USC §3604 (2021).

41.    The Fair Housing Act ("FHA") was enacted in 1968 with the ambitious purpose of eliminating to the greatest extent possible the role played by structural inequalities and racism in all facets of the housing market. Accomplishing that purpose requires more than prohibiting explicitly discriminatory acts. It also requires prohibiting facially neutral policies and practices that have an unnecessary disparate and negative impact on protected classes.  From the beginning, courts have held the Fair Housing Act bars such policies and practices recognizing disparate-impact claims.

42.    For nearly fifty years, disparate-impact claims have played a central role in making the promise of the federal Fair Housing Act, 42 USC §3601 *et seq.*, a reality for millions of Americans.  The central tenet of disparate-impact law under the Act has always been that a public or private entity must adopt an available

alternative to a policy or practice that has a discriminatory effect, so long as the alternative can satisfy the entity's legitimate needs with less discriminatory effect. 24 CFR §100.500 (2021). Through these longstanding requirements, disparate-impact law has been critical in reducing inequities affecting housing. It has ferreted out covert intentional discrimination and forced companies to jettison policies based on "disguised" assumptions that are often difficult to identify.

43.    California has its own fair housing statutes to address housing discrimination and expand the protected classes. The statutes explicitly prohibit discrimination against and protect classes on the basis of source of income, sexual orientation, marital status, age, arbitrary characteristics, and gender identity & expression. Cal. Gov't. Code §§12900-12996 (2021).

44.    The California Legislature also enacted the Unruh Civil Rights Act which specifically outlaws discrimination in housing based on sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language or immigration status. Cal. Civ. Code §51 (2021). The California Supreme Court has held that protections under the Unruh Act are not necessarily restricted to these characteristics as it is meant to cover all arbitrary and intentional discrimination in housing and lending transactions by a business establishment on the basis of personal characteristics. *See* In re Cox, 3 Cal. 3d 205 (1970).

45.    Plaintiffs in this matter all enjoy robust discrimination protections under the federal and state laws.

### III.    The City of Encinitas

46.    According to the most recent US Census, the City of Encinitas is a predominantly Caucasian community consisting of married affluent households. The Encinitas population is approximately 62,709 of which 87.6% is white. *See* Exhibit E.  13.8% of Encinitans are Hispanic, and 4.2 percent are Asian. *See id.*

47.    In 2020, the City of Encinitas participated in the San Diego Regional Analysis of Impediments to Fair Housing ("SDRA") to produce a demographic profile of the region and assess the fair housing issues among specific groups. *See* Exhibit F.  The SDRA illustrates the fair housing issues Encinitas faces, and how persons of protected classes like Plaintiffs often face discrimination and impediments in the ability to buy homes in Encinitas.

48.    Encinitas has one of the lowest Hispanic and Asian populations of the entire San Diego region. *See id*. at p. 23. And single female mothers only constitute 3.6% of Encinitas' population. *See id.* at p. 31. In fact, single female headed households with children were identified as residents with special fair housing needs that require greater access to housing in the community. *See id.* at p. 33, 37-38. Similarly, households with disabled persons are also identified as special needs residents lacking fair housing options. *See id.,* at 33, 38-44.

49.    The City of Encinitas, as a public agency, has a statutory duty to affirmatively further fair housing. Cal. Gov't. Code §8899.50.  The City is required to administer its programs and activities relating to housing and community development in a manner to affirmatively further fair housing, and take no action that is materially inconsistent with its obligation to affirmatively further fair housing. *See id.*

50.    Additionally, the City of Encinitas is the recipient of federal funds through the Community Development Block Grant ("CDBG") program. Grantees in the CDBG program have a responsibility to affirmatively further fair housing. 24 CFR §570 (2021).

51.    These duties to affirmatively further fair housing apply to the City's implementation and execution of California's density bonus laws and the affordable home sales. The City adopted an ordinance amending its municipal code to be consistent with the state's density bonus law. Enc. Mun. Code §30.41 (2018). The city codified that as part of the density bonus application process, developers were required to enter into an Affordable Housing regulatory agreement ("AHR") with the City. Enc. Mun. Code §30.41.090(B) (2018). According to the Code, the agreement must "ensure all the requirements of [the density bonus law] are satisfied." *See id.* §30.41.090(B)(1) (2018).  The AHR must be recorded with the San Diego County Recorder's office, and "shall specify," among many things, provisions for income certification and screening of potential purchasers of units,

resale control mechanisms, and be consistent with the approved affordable housing plan and any adopted affordable housing guidelines determined by the City's manager or designee.  All affordable units are required to remain affordable to the targeted income group in perpetuity. Enc. Muni. Code §30.41.100(B) (2018). The City is responsible for ensuring the developers are complying with the density bonus laws and fair housing laws.

52.    Unfortunately, this case highlights how the City of Encinitas has failed its duties causing harm to Plaintiffs. The City of Encinitas has mismanaged the density bonus affordable home program significantly causing a disproportional adverse effect on Plaintiffs.

53.    The City's affordable housing regulatory agreements are problematic and have created a vehicle for a discriminatory effect.  The City on its own volition, has crafted the agreements to allow developers to sell the affordable homes to non-qualified investor buyers enabling a discriminatory impact on Plaintiffs.  The City's allowance in these agreements for the non-qualified investor buyer is not mandated by state law. The density bonus laws have no such provision anywhere mandating cities to allow investors to purchase the properties.  Cal. Gov't. Code §65915 *et seq*. Yet, the City has tried to spin this investor buyer scheme as though it is required to do so under state law. The City promoted its investor purchase option through its social media websites stating "State law requires applicable City ordinances the option for the required onsite affordable unit to be sold or rented. This allows three

options for the developer: …the developer may choose to sell the unit to a non-qualified buyer who will manage and rent the unit as affordable to a qualified low-income renter." *See* Exhibit G. The City's Director of Development Services charged with overseeing the affordable home sales in Encinitas, Roy Sapa'u, reiterated this position in a recent news article. *See* Exhibit H. When asked what specific law mandates it, the City's public information officer cited Cal. Gov't. Code 65915. *See id*. This is false. There is no requirement under Gov't Code 65915 or any other state law mandating the City to allow a developer to sell an affordable home to a non-qualified investor over qualified low-income households. This scheme that the City invented has resulted in a discriminatory impact on protected classes and goes against the codified intent of the state density bonus laws.

54.    Because of this invented scheme through their regulatory housing agreements, an overwhelming majority of designated affordable homes in the City of Encinitas have been sold or transferred to wealthy investors and developer friends and not sold to very-low income households. In fact, of the 22 affordable single-family homes[4] built under the density bonus law, only 6 of them have been sold to

---

[4] Plaintiffs have been only able to identify, thus far, 22 single-family homes built under the density bonus program in Encinitas. This is based off a list the City provided through a recent request under the California Public Records Act (CPRA). However, as discussed infra, the list is outdated and filled with incorrect/missing information.

low-income or very low-income households[5]. That is a mere 27%. This implies 73% of the single-family affordable homes are going to non-occupant investors. This is a rate four times worse than the national average for market-rate homes.  Plaintiffs believe there may be more affordable homes owned by investors not included on the City's outdated list which would make that percentage freefall.

55.     The sale of these affordable homes to investors is with full knowledge of the City. The City takes on a role in the sale process of these affordable homes. The City is required to be notified within a certain timeframe by the developer that the home is going to be sold. The City is responsible for overseeing the sale process to ensure the sale is compliant with *all* federal and state laws. The City is involved in the determination of the sale price of the home, the oversight of the advertisement of the home for sale, the oversight of the selection of the buyer, and the execution of new affordable housing regulatory agreements with the purchaser.

56.     Here, the City has failed their duties as well.  As discussed in more detail below, the City failed to ensure the advertisement of the home was in compliance with federal and state fair housing laws, the City failed to provide proper oversight of the selection of the buyer of the homes, and the City failed to ensure the developer was not violating the fair housing laws or unfair competition laws in the sales process of the home.

---

[5] Whether these households are truly in fact low-income or very low-income or remain is uncertain as well.

57.     The City has failed to keep adequate records of the affordable home sales in their town. The records obtained through a CPRA request show an outdated list of affordable homes with missing information.  The City list showed inaccurate records of ownership. As one example, the City's list showed the owners of some of the homes as certain LLCs, when County records show the homes have been transferred to the investor owner's family trusts[6].  And according to County records, some of the homes do not have proper affordable housing regulatory agreements in place with the owners of the affordable homes.

58.     The City has allowed investors to rent to friends and/or family that may or may not be low-income or very low-income households. Some of the homes remain vacant.

59.     The City has allowed affordable homes to be sold to pre-existing relationships and precluded protected classes from participating in the home sale process rightfully.

60.     In essence, the City has failed its duties to affirmatively further fair housing in the City of Encinitas harming Plaintiffs.

IV.    **The "Loden" Development and 1317 Portola Road**

---

[6] Two affordable home on Quentin Court and Kava Court were listed by the City of Encinitas as owned by LLCs. However, those homes have been transferred to the LLCs owner, Stefan LaCasse's, personal family trust. This is not reflected in City records. No AHR agreement between LaCasse's family trust and the City of Encinitas could be found in County records.

61.    On March 16, 2008, a multi-acre parcel in the Olivenhain community of Encinitas, California was sold and deeded by a private trust to Woodridge Farms Estates, LLC, ("Woodridge Farms") a now-cancelled California limited liability company.  Woodridge Farms applied for and received approval from the City of Encinitas to develop 16 luxury residential homes under California's Density Bonus laws ("DB"). Cal. Gov't. Code § 65915 (2020).

62.    On February 23, 2018, WPG Founder and President Todd Cunningham formed the shell company WPG Desert Rose LLC in the State of Delaware.  Desert Rose, at an unknown time, took over the Loden development project from Woodridge Farms and became the primary developer on the project.

63.    As part of the approval under Woodridge Farms, the developer was to construct one of the homes to be affordable to very low-income households ("VLI"). Woodridge Farms identified the property at 1317 Portola Road in Encinitas to be the designated affordable home.

64.    Woodridge Farms entered into an affordable housing regulatory agreement ("AHR") with the City of Encinitas on March 20, 2018, outlining the terms of the affordable home construction and its sale. The document was recorded with the County of San Diego as Document No. 2018-0121625 on March 27, 2018.

65.    The date is after the formation of the shell company Desert Rose. It is unknown if Desert Rose was deeded the property by Woodridge Farms before or after the date of the AHR between Woodridge Farms and the City of Encinitas.

66.    The AHR outlined a number of covenants and restrictions Woodridge Farms was subject to, including the condition that the home "shall only rent or sell … to a VERY LOW INCOME HOUSEHOLD." *See* Exhibit A, p. 3, §§2.F. and 3.A. The sale of the home also cannot be sold to any pre-determined household and any sale must comply with federal and state housing laws. *See id.*, p. 3, §3.D. and 3.E.

67.    The City of Encinitas did not enter into a new and separate AHR with Desert Rose when it became the shell company to construct and sell the development.

68.    Desert Rose constructed 16 single-family homes on the Loden development.  WPG listed itself as the developer of the luxury Loden project on its website www.woodbridgepacific.com. WPG's employees managed the sale of its homes, including Sara Near, who is the Vice President of Sales Management at WPG.

69.    In the summer 2019, WPG introduced Loden at Olivenhain with an "opening" of an on-site preview gallery on the property premises.  From summer 2019 until 2021, WPG vastly marketed the development in the San Diego community. It issued press releases, listed the houses on online homes sales websites, and ran ads in various newspapers in the area. The ads emphasized that there were a limited number of homes, offered private tours, and marketed an online priority registration for interested buyers at www.lodenolivenhain.com. No advertisements mentioned the availability of the designated affordable home.  They

only mentioned the sale prices of the homes starting at $1.7 million. WPG only advertised the designated affordable home during a minimal two-week period in March 2021.

70.     Enter Plaintiffs. Plaintiffs all live in the City of Encinitas.  Plaintiffs all have minor children that live with them in Encinitas. Plaintiffs all are renters in Encinitas.  Plaintiffs are all very low-income households. Plaintiffs all want to purchase an Encinitas affordable home designated for very low-income households for their family.

71.     Plaintiff B. Talley became aware that there was a designated affordable home going to be for sale in the Loden development at some time in February 2020. He contacted WPG on behalf of him and his wife, K. Talley, and asked to be added to WPG's list as an interested buyer for 1317 Portola. Plaintiff B. Talley followed up with WPG confirming again he was on the list and to seek updates about the application process. Each time he was told he was on the list and would be notified.

72.     Plaintiffs Anderson and Sorensen became aware sometime in August 2020 through word of mouth in the community that there was a designated affordable home going to be for sale in the Loden development.  Both reached out separately to WPG to inquire about the possibility and asked to be added to WPG's list as an interested buyer for 1317 Portola. Plaintiffs Anderson and Sorensen followed up with WPG numerous times, separately, for updates about the application

process. Each time they were separately told they were on the list and would be notified.

73.    Defendant WPG's sales staff confirmed to Plaintiffs in 2020 they had been added to the WPG homebuyer interest list for 1317 Portola. Plaintiffs were hopeful this would be their chance to purchase and secure a home in Encinitas.

74.    WPG placed an advertisement in The Coast News, a local newspaper, located in Encinitas, California. According to records obtained through a California Public Records Act request, the advertisement ran in The Coast News on March 5, 2021 and March 12, 2021.  *See* Exhibit I.

75.    WPG's advertisement was minimal by design to cast the smallest net of applicants as possible. Rather than use the words "For Sale" the ad stated "Affordable Homeownership Program Available Now."  The advertisement failed to list the sales price.  The City reviewed the advertisement and approved it on March 3, 2021.

76.    On March 6, 2021, Plaintiffs received a mass email from WPG notifying Plaintiffs for the first time that an application period had been opened for interested parties to apply for 1317 Portola.  The application period was open from March 6, 2021 to Friday, March 17, 2021, a mere 11 days after the email notification, and only 5 days after the second advertisement ran in The Coast News.

77.    WPG's email notice listed the requirements candidates had to meet.  It stated Buyer's annual income could not exceed $46,200 per year to be considered.

If the annual income criteria were met, the buyer had to pre-qualify with Jeff Wiersma at US Bank by submitting an online loan application.

78.    Plaintiff B. Talley read the email and saw the income amount WPG listed in their email notification as the first requirement.  He and his wife's income was over the stated amount. Disappointed and frustrated, Plaintiffs B. Talley and K. Talley took no action.

79.    Plaintiffs Anderson and Sorensen's income amounts both met the income criteria listed on the email notification. They took immediate actions and gathered all their required documentation and submitted the application before the 5:00pm deadline on March 17, 2021.

80.    Subsequently, Plaintiffs Anderson and Sorensen received notification from US Bank that they were qualified applicants. They were each separately told by WPG that they were on the list of qualified applicants for the home. Plaintiffs Anderson and Sorensen each were excited and hopeful that this would be their chance to become Encinitas homeowners.

81.    Later, Plaintiff B. Talley realized that WPG had listed the wrong income amount on its email notification.  He contacted WPG and informed them they listed the wrong income amount for who should have qualified to apply. Plaintiff B. Talley asked WPG if he could still apply since he and his family qualified under the correct income amount. WPG denied him the opportunity to apply saying

it was past the March 17, 2021 deadline. Plaintiff B. Talley complained to the Development Services Department at the City of Encinitas.

82. On March 25, 2021, WPG sent an email notification to applicants that the application process had been reopened and extended to April 2, 2021.

83. Plaintiffs B. Talley and K. Talley submitted a joint application as a married couple with US Bank. US Bank notified the Talleys they were pre-qualified and that they would be added to the list of qualified applicants. The Talleys were exuberant that they were able to be considered. They were excited and hopeful that this would be their chance to become Encinitas homeowners.

84. Plaintiffs all followed up with WPG numerous times, incredibly hopeful that this would be their moment to buy an Encinitas home for their families to live in for a lifetime.

85. Plaintiff B. Talley followed up with WPG in April 2021 after he and his wife submitted their application. It was not until May 14, 2021, after Plaintiff's inquiry that WPG informed the Talleys the property had been sold to another party. The Talleys were frustrated and devastated.

86. Plaintiff Sorensen followed up with WPG several times in March and April 2021 about her pending application to see if there were any updates hoping she would be selected. Later, Sorensen learned the property had been sold to another party. Sorensen was frustrated and devasted.

87.     Plaintiff Anderson followed up with WPG several times on the status of her application from March until August 2021. WPG last responded to her inquiries on April 13, 2021, confirming Anderson was a qualified applicant on the list and that a decision was pending. She never received a response from WPG again. It was not until a news article was published on September 15, 2021, in The Coast News that Anderson learned the home was sold. Anderson was frustrated and devastated.

88.     WPG had in fact, already sold the affordable home to a non-qualified real estate investor, David Santistevan, a real estate broker, and the managing member of Santiara, LLC and Scramark, LLC.

89.     WPG submitted a letter to the City of Encinitas on April 15, 2021, to request approval to sell the property to Santiara, LLC as a non-qualified buyer. On April 20, 2021, the City's Principal Planner, Lillian Doherty, approved the sale of 1317 Portola from WPG to Santiara, LLC.

90.     On May 10, 2021, David Santistevan formed and registered Scramark, LLC with the California Secretary of State.

91.     On June 4, 2021, WPG notified the City of Encinitas that Scramark, LLC was now going to be holding title for 1317 Portola.

92.     On June 21, 2021, Scramark, LLC and the City of Encinitas entered into a new AHR that was recorded with the County of San Diego on July 1, 2021, as Document No. 2021-0478443. Under the terms of the AHR, Scramark is required

to rent 1317 Portola to a very low-income household, not rent to a pre-determined household, and must comply with federal and state housing laws.

93.     Upon learning of the sale to a non-qualified buyer through The Coast News article, Plaintfiff Anderson contacted WPG and David Santistevan of Scramark, LLC on September 16, 2021. Plaintiff Anderson emailed WPG and Santistevan that she was one of the qualified applicants and had learned of the sale to Scramark. She explained she was a single mother with one child and a teacher, and asked for an opportunity to apply to rent the property from them. Anderson gave all her qualifications and made a case for why she should be selected to rent the property.  On September 20, 2021, David Santistevan responded to Anderson and told her that Scramark had already rented the property, and that he could not rent to her because of the size of her family.  Plaintiff was left devastated and feeling hopeless.

94.     1317 Portola remained vacant and unoccupied months after the closing of the sale until at least November 1, 2021.

95.     Evidence has come to light that Plaintiffs never had a chance to purchase the 1317 Portola Road home.

96.     WPG sold the home to Santiara/Scramark/Santistevan before the closing of the application period.  According to the San Diego County Recorder's office, the home was sold to the investor on March 17, 2021 as reflected on the sale date of the recorded deed. *See* Exhibit J. This was before the application closing date

of April 2, 2021. Yet Defendants WPG/Desert Rose concealed this fact from Plaintiffs and continued to lead them on well after into April 2021 that they were still being considered for the sale of the home.

97.    Additionally, WPG sold the home to Santiara/Scramark/Santistevan in complete violation of the laws, by offering different sales terms to him than Plaintiffs.

98.    The approved sale price by the City was $111,843.79. *See* Exhibit K. Woodridge/WPG told Plaintiffs to list all their offer prices at $112,000.00 on their lender applications (the equivalent of the approved sale price), which is what Plaintiffs all did.

99.    Woodridge/WPG then prematurely sold the home to Santistevan for $175,000.00, of which Santistevan mortgaged $113,000.00, and then gave Defendants Woodridge/WPG an additional cash bonus of $63,000.00.    These different sales terms for Santistevan versus Plaintiffs is unlawful.

100.    Woodridge/WPG submitted their request for the approval of the sale to the City of Encinitas. Woodridge/WPG was to provide specific information, including but not limited to, how the home was advertised, how the applicants were reviewed and processed, and how the proposed buyer was an eligible household.

101.    The City had been on notice that there was a list of 80 potential very low income buyers since March 31, 2021 (14 days after the sales deed was already

dated). Yet, they did not bat an eye, when the developer asked the City to approve the sale to an investor buyer.

102.   In fact, the City publicly defended the sale to Santistevan on social media and in a news article. The City's Director of Development Planning, Roy Sapa'u said that the sale to an investor was provided for under state law and that the City "can't influence the process." *See* Exhibit H. This is false; it is not required by state law and the City has a duty to ensure the process complies with fair housing rules.  The City published on their Facebook page a posting defending the sale as required by state law. *See* Exhibit G.

103.   The City continued their defense in the posting stating the buyer (Santistevan) "already owns and manages two affordable units in the City and has consistently been in good standing." *See id.* However, this too is false.

104.   Santistevan, through his shell company Santiara, LLC, owns two other affordable single-family homes in Encinitas on Sandy Court and Dolphin Circle. Santistevan is not in good standing as he has not adhered to the rules. Instead he is housing his employee/friend's family in the affordable homes.

105.   Santistevan works at Collier's International in La Jolla, California. His Brokerage Senior Vice-President is Defendant Ciara Layne-Trujillo.[7] Layne-Trujillo

---

[7]   Ciara Layne-Trujillo purchased another designated affordable home in Encinitas on Urania Avenue under a shell, Trumen LLC and has her friend, Molly Bristol, residing there. Bristol is the owner of Reef Home Loans and is not believed to be very low-income.

works on his team at his La Jolla office.  *See* Exhibit A. At the affordable home on Sandy Court, Santistevan is housing, Ciara's mother Cindy, or Cyd.  In Santistevan's other affordable home on Dolphin Circle, Ciara's sister, McKenna, resides in the home.

106.   Santistevan and Layne-Trujillo have been colluding to acquire these affordable homes in Encinitas for personal benefit. They decided to do the same with the acquisition of 1317 Portola Road through their prior business relationship with developer WPG and Desert Rose. They conspired with WPG and Desert Rose to sell them the affordable home for their personal benefit.

107.  Plaintiffs allege WPG, Desert Rose, Santiara, Scramark and Santistevan and Layne-Trujillo have violated federal and state laws in the marketing, sales, and rental of 1317 Portola and the City of Encinitas failed its duty to Plaintiffs by approving the sale.

## V.    The "Mackinnon" Property at 1412 Mackinnon Avenue

108.   In 2016, the City of Encinitas approved a residential development project under the California Density Bonus laws for a parcel located on Mackinnon Avenue in the Cardiff community of Encinitas, California.   The project was developed by RTA Cardiff, LLC ("RTA Cardiff"), a Delaware limited liability company.  As part of the City approval, RTA Cardiff was to construct one single-family residential home and it was designated to be an affordable home for a very low-income household.

109.    At some time, RTA Cardiff transferred the development parcel to New Pointe Investment 37, LLC, a single-member company managed by its sole member Scot Sandstrom, who is also the founder and President of New Pointe Communities, Inc., a real estate development and construction firm.  According to California's Secretary of State business search system, Mr. Sandstrom has formed and registered around 50 shell companies, all engaged in real estate investment. He is the former president of the San Diego chapter of the Building Industry of America. New Pointe became the developer who constructed the Mackinnon project.

110.    On September 7, 2017, New Pointe entered into an AHR with the City of Encinitas regarding the designated affordable home to be sold of the development project, which was recorded with the County of San Diego on October 17, 2017 as Document No. 2017-0482128.   The address of the designated home was 1412 Mackinnon Avenue.

111.    The AHR outlined a number of covenants and restrictions New Pointe was subject to, including, the home was to be sold or rented only to very low-income households. The sale of the home also cannot be sold to any pre-determined household, not be sold to anyone with a pre-existing relationship with the seller, and any sale must comply with federal and state housing laws.

112.    The construction was completed in 2019. The homes, with the exception of the designated affordable home, all sold for over $1 million.

113.    Enter Plaintiffs.  Once again, Plaintiffs became aware of the Mackinnon development project at differing times and became aware that one of the homes was a designated affordable house.  Plaintiffs took action to see if they could have the chance to apply to purchase the home.

114.    On July 7, 2019, Plaintiff B. Talley reached out to New Pointe's management on behalf of himself and wife K. Talley, and asked to be added to the affordable home buyer list. He received no response from the seller or his agents. Talleys never became aware of when the home was available for buyer applications.

115.    On September 22, 2020, 1412 Mackinnon was listed for sale on the multiple listing service ("mls"). *See* Exhibit L. According to the mls, the sale price was listed as $137,993.00.  The listing agent was Marquez of Marcor and Pacific Sotheby's.

116.    1412 Mackinnon was also advertised on a website www.1412mackinnon.com.  It is unknown when the website went live or for how long the website was active.  It stated the application period was until 5:00pm September 26, 2020.  It contained substantial information outlining and contained a contact form for prospective buyers to contact the seller's agents.

117.    The preferred lender used by New Pointe in the sale of the affordable home was Victor Spayde and Finance of America Mortgage, LLC.  *See* Exhibit C. Spayde, a mortgage loan originator, works at Finance of America Mortgage's San

Diego branch. Spayde was in charge of cross-qualifying/qualifying the potential buyers of the affordable home for the seller.

118.    Plaintiff Sorensen learned of the sale listing through a friend.    On September 24, 2020, Sorensen contacted Marquez's office to inquire about the application process.  The same day Plaintiff Sorenson reached out to Victor Spayde to be ask what she needed to submit to him to be qualified and considered to purchase the home.  *See* Exhibit P.  Spayde never responded to Plaintiff Sorenson or cross-qualified her for the purchase of the property.

119.    On September 25, 2020, Marquez's office responded to Sorensen confirming the process that Sorenson could use her own lender but that she had to be cross-qualified by the seller's lender Victor Spayde. *See* Exhibit Q.    Again, Sorenson never received any communication from Spayde and was never cross-qualified by him.

120.    On September 26, 2020, Sorensen received confirmation she had been qualified as an applicant from her own lender. That same day she submitted an offer as a qualified buyer.  Sorensen was excited and hopeful that this would be her chance to buy a home for her family in her native Encinitas. Sorenson's agent was in communication with Marquez's firm several times regarding the application process and documentation.

121.    On October 13, 2020, Marquez's office informed Sorensen 1412 Mackinnon was sold to another buyer and Sorensen learned that the buyer was a non-qualified buyer.  Sorensen was devastated, frustrated, and felt hopeless.

122.    The mls history shows the mls listing was changed on September 26, 2020 at 12:50:32pm to active "under contract". *See* Exhibit M. The property was under contract prior to the deadline for application submissions at 5:00pm.

123.    The mls listing was changed to under contract roughly five minutes before Marquez's firm sent an email to Sorenson's agent with instructions of what to do to complete the application process. *See* Exhibit R. Marquez's firm did not disclose at that point that the seller had already accepted another buyer's offer.  They concealed the listing was already under contract from Sorenson and misrepresented to her that it was still available for her to proceed in submitting an offer.

124.    On October 6, 2020, New Pointe deeded 1412 Mackinnon to Kenneth Reed ("Reed"), a non-qualified investor. The property was sold to Reed, as a married man as his sole and separate property. On October 7, 2020, the mls status of the property was changed to sale pending, less than two weeks after the home had been placed on the mls. *See id.*  On October 21, 2020, the mls status changed again to closed. *See id.*

125.    The City of Encinitas approved the sale to Reed over Plaintiffs who were qualified very-low income households and a protected class.  On October 15, 2020, Reed entered into an affordable housing agreement with the City of Encinitas,

which was recorded at the County of San Diego on October 20, 2020, as Document No. 2020-0636976.

126.    Later, Reed conveyed an interspousal transfer to his wife and the property is currently owned jointly by Reed and his wife as Joint Tenants.

127.    Reed is a mortgage advisor employed by Finance of America Mortgage, LLC in the San Diego branch at 2365 Northside Drive in San Diego, California. *See* Exhibit D.  Reed and Spayde are coworkers in the same San Diego branch of Finance of America Mortgage and social media friends. *See* Exhibits B and N.

128.    According to Victor Spayde, any potential buyer that wanted to live in the Mackinnon home were automatically disqualified and not considered by the seller. The only persons the seller would consider were investors who would pay cash and were not going to live in the home.

129.    Sorenson    through    her    agent    had    discussed    with Marquez/Marcor/Pacific Sothebys extensively about Sorenson's qualifications as a buyer. However, Marquez/Marcor/Sothebys and New Pointe discriminated against Sorenson in the sale of 1412 Mackinnon by refusing to negotiate in the sale of the home in violation of federal and state laws.

130.    Plaintiffs allege New Pointe, Victor Spayde, Kenneth Reed, and Finance of America Mortgage LLC violated federal and state laws in the marketing and sale of 1412 Mackinnon and the City of Encinitas failed its duty to Plaintiffs by approving the sale.

# **LEGAL CLAIMS**

I.      **First Cause of Action – Violations of the Fair Housing Act**

       **(Individual Plaintiffs Against All Defendants for violation of**

       **42 U.S.C. §§ 3601-3619; 24 C.F.R. §§ 100.50-100.85)**

131.  Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

132.  The Individual Plaintiffs are all members of protected classes under the FHA.  Plaintiffs Anderson and Sorensen are each very low-income homebuyers as single women with minor children.  Plaintiff Sorenson is Asian. Plaintiff Anderson's son is a special needs child. Plaintiffs Talley and Talley are each very low-income homebuyers as people of color. B. Talley is Hispanic and K. Talley is Asian. All Plaintiffs' offers and ability to purchase the homes were based upon a mortgage and were not able to pay cash.

**A. Defendant City of Encinitas' Violations of the FHA**

133.  Plaintiffs allege Defendants' devised and implemented a scheme through the AHRs to allow investors to sweep up and purchase the homes. Even if facially neutral, the housing agreements have a discriminatory impact on very-low income buyers of color, and single female mothers of minor children.  This unlawful scheme violates the spirit of the density bonus laws, the Fair Housing Act, and is not supported by any substantial and legitimate nondiscriminatory objectives, in contravention of 42 USC §3604.

134.   By crafting this scheme to benefit the developers and their friends, Defendant City has made home sales opportunities to Plaintiffs unavailable because it allowed for the developers to deny selling a home to Plaintiffs because of their race, marital status, familial status and source of income in violation of 42 USC §3604, 24 CFR §110.50 and Cal. Gov't. Code §8899.50.

135.   Plaintiffs allege Defendant City failed their duty to affirmatively further fair housing by failing to provide adequate oversight of the sale of the designated affordable homes pursuant to Cal. Gov't Code §8899.50.   The City approved advertisements used in the sale of the Loden property that resulted in a disparate impact on Plaintiffs and other similarly placed protected persons.   The City unlawfully approved a discriminatory sale where the developers provided different sale terms to the wealthy investor buyers than to Plaintiffs when it had full knowledge Plaintiffs, a protected class, and were qualified buyers. The developers gave different sales prices and terms to the investor buyers than Plaintiffs. The City had a duty to review and challenge the developers premature choice and sale to wealthy male investors over Plaintiffs, and failed to do so. Defendant City's actions and inactions resulted in a discriminatory impact on Plaintiffs in violation of 42 USC §3604, 24 CFR §100.50 and Cal Gov't. Code §8899.50.

136.   The City then tried to spin their wrongdoing by erroneously hiding under the color of the state density bonus law where they know there is no such requirement. *See* Exhibits G and H.  Even if there were any such state law, the Fair

Housing Act trumps any state law that requires or permit any action that would be a discriminatory housing practice shall be deemed invalid. 42 USC §3615.

137.    As a result of the City's unlawful actions and failures to adhere to their duty to affirmatively further fair housing in the sale of the affordable homes, only 27% of the homes[8] known to Plaintiffs (6 out of 22) have been sold to very low-income families.  This includes the two homes in this particular matter. The rest have been sold in back door deals amongst the privileged "old developers club." Some have been quietly transferred into family trusts, enriching their own family's generational wealth, and precluding the protected class from participating.  The City's allowance of the sale of affordable homes to investors has a disproportionate adverse impact on those protected by the FHA like Plaintiffs. This goes against the heart of the Fair Housing Act.

138.    The AHRs destroy the protected class Plaintiffs chance of owning affordable homes in Encinitas, as evidenced by the abysmal very low-income home ownership local statistics. It keeps the protected class Plaintiffs stuck in a rental cycle that precludes them from participating in the home sales market and enriches already wealthy male investors. These local statistics demonstrate clearly and convincingly

---

[8] It is believed there may be more designated affordable homes in Encinitas owned by investors that are currently unknown to Plaintiffs. Plaintiffs believe the additional homes would cause a rapid decrease in this percentage.

the odds are four times worse for affordable home applicants in Encinitas than nationwide market-rate homes. The statistics should be the opposite.

139.   As a recipient of federal funds to administer housing and community development programs, the City of Encinitas has a statutory duty to affirmatively further fair housing. 42 U.S.C. §3616a; Cal. Govt. Code §8899.50. The City has a duty to "administer its programs and activities relating to housing and community development in a manner to affirmatively further fair housing, and take no action that is materially inconsistent with its obligation to affirmatively further fair housing." Cal. Gov. Code §8899.50(b). Here, the City failed to administer its density bonus affordable housing program and activities in its dealing with its co-Defendants, causing a disparate impact on Plaintiffs in violation of 42 U.S.C. §§3604 and 3605.

**B. All other Defendants' Violations of the FHA**

140.   Plaintiffs allege Defendants' unlawful discriminatory conduct in the marketing and sales of the affordable homes in Encinitas constitutes disparate treatment and has had a disproportionate adverse effect on Plaintiffs who are protected under the Fair Housing Act.

141.   Defendants WPG, Desert Rose, and New Pointe refused to sell to Plaintiffs after the making of a bona fide offer and refused to negotiate for the sale of the affordable homes because of their race, sex, marital and/or familial status in violation of 42 U.S.C. §3604(a). Defendants made statements and took actions that

indicated a preference and limitation based on their marital and familial status, race and sex. They specifically preferred and limited very low-income protected class Plaintiffs from being able to negotiate and purchase the home because they preferred to sell to married wealthy white males who could pay with cash, rather than a mortgage. Defendants' conduct was intentional, willful, and made in reckless disregard of the known rights of others.

142.   Defendants WPG and Desert Rose discriminated against Plaintiffs by setting different sales price terms for Plaintiffs from investors. WPG and Desert Rose told Plaintiffs to list $112,000.00 as their offer price but sold the home to Santiara/Scramark/Santistevan with Layne-Trujillo's help for $175,000.00.

143.   Defendant New Pointe discriminated against Plaintiffs by refusing to allow Plaintiffs Anderson and the Talleys to negotiate and engage in the sale process at all after they asked to be added to the list of interested buyers and be allowed to apply when the application period opened.

144.   Defendant New Pointe discriminated against Plaintiff Sorenson, a qualified purchaser, in the sale of the home by refusing to allow her negotiate in the sale of the home based on her race, gender, marital status, and familial status. Defendant New Pointe's conduct and Spayde's statements demonstrate Defendants did not allow her to participate as a single asian female household with four children who would live in the home; rather, they only would sell an investor. Defendant New Pointe discriminated against Plaintiff Sorenson when they failed to counter

offer Sorenson as they did to counter the male investor buyers. Defendant New Pointe's conduct was intentional, willful and made in reckless violation of 42 USC §3604 with disregard to the known rights of Plaintiffs.

145.    Defendant Marcor, Marquez and Pacific Sotheby's discriminated against Plaintiffs in the marketing and sale of the home.  Marquez's mls remarks stated that the house "must continue to be a rental unit to arms length tenant for 55 years." That is incorrect and would immediately narrow the applicant pool. Marquez's firm only marketed this home to investors intentionally and with reckless disregard of the known rights of others.    Additionally, Defendants Marquez/Marcor/Pacific Sothebys told Spayde, the preferred lender, that only investors that paid cash were qualified to buy the property.  This is unlawful discrimination, intentional, willful and made in reckless violation of 42 USC 3604 with disregard to the known rights of Plaintiffs.

146.    Defendants WPG and Desert Rose created vague non-informative advertisements to cause as minimal a pool of applicants as possible for the 1317 Portola property with all intention to limit and discriminate in violation of 42 U.S.C. §3604(c). Defendants' conduct was intentional, willful, and made in reckless disregard of the known rights of others.

147.    Defendants' practices to manipulate the density bonus affordable housing program have had a disproportionately adverse effect on protected classes, thst are not otherwise justified by a legitimate rationale, in contravention of 42

U.S.C. § 3604 and 3605.  *See Texas Dep't of Hour. & Cmty. Affairs v. Inclusive Communities*, 135 S. Ct. 2507, 2521 (2015) (noting that "[r]ecognition of disparate impact claims is consistent with the [Fair Housing Act's] central purpose" as it "was enacted to eradicate discriminatory practices within a sector of our Nation's economy") (citations omitted).

C. **Defendants Scramark, Santiara and Santistevan and Layne-Trujillo's Violations of the FHA**

148.    Defendants Santiara, Scramark and Santistevan and Layne-Trujillo violated the FHA when they conspired with WPG and Desert Rose to preclude Plaintiffs from participating in the sale process of the property as described above. Defendants had preexisting business relationship with the developer and sabotaged the Plaintiffs directly by violating the FHA. As licensed real estate brokers they were well aware their actions were unlawful.

149.    Defendants Santiara, Scramark and Santistevan violated the FHA in its refusal to rent 1317 Portola to Plaintiff Anderson because of her marital and familial status in violation of 42 U.S.C. §3604.

150.    When Plaintiff Anderson learned Santistevan was the investor who purchased 1317 Portola, she immediately reached out to Santistevan to make a bona fide offer to rent the property from him.  On September 20, 2021, months after Santistevan bought the property, he responded to Anderson's offer via email saying "we found a larger family that qualified for the unit, *which is required*." *See* Exhibit

O (emphasis added). He denied her the ability to rent it because she was a single mother with one special-needs child.

151. As of today's date, months after the sale, the property remains vacant and unoccupied.

152. Santistevan refused to negotiate in the rental of the property with Anderson, falsely represented the property was not available and had already been rented, and denied Anderson the term, condition and privilege of renting the home because of her sex, marital status and familial status in violation of 42 USC §§3604(a), (b), (d), and (f)(1)(b).

153. Defendants' conduct was intentional, willful, and made in reckless disregard of the known rights of others.

### D. **Defendants Spayde, Reed, and Finance of America Mortgage, LLC's Violations of the FHA**

154. Defendants Spayde and Finance of America violated the Fair Housing Act in their actions to make unavailable and deny Plaintiffs the ability to negotiate the sale of 1412 Mackinnon when they refused to qualify her because of race, gender, marital status, and familial status.

155. Spayde was the lender used by the seller in charge with qualifying all the persons making a bona fide offer for the property. Finance of America is the employer of Victor Spayde and responsible for the actions of its agents. Spayde refused to cross-qualify Plaintiff Sorenson for the purchase of the home, which was

disparate treatment of Sorenson and had a disproportionate adverse effect on Sorenson who enjoys the protections under the FHA. Spayde as a creditor is required to treat all applicants equally and he failed to do so. Yet, the seller was only accepting cash offers. Spayde's role was a farce. There was no loan qualification process because the seller was only accepting cash offers.

156. Reed who had a pre-existing relationship with Marcor and Marquez, was given preferential treatment by the seller and seller's agents precluding Plaintiffs from participating in the sale of the Mackinnon home which benefitted and enriched Reed. Reed's co-worker at Finance of America, Spayde, failed to qualify Plaintiff Sorenson for the home when she made a bona fide offer for the home because of her race, gender, marital status, and familial status in violation of 42 USC §3604; 15 USC §1691; 24 USC §§100.50, 100.110-135; 24 CFR §100.7 (2021). Defendants' conduct was intentional, willful, and with reckless disregard of the known rights of others.

## II. Second Cause of Action – Violation of Section 1983

### (Individual Plaintiffs Against All Defendants for Violations under 42 USC 1983)

157. Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

158. Based on Defendants' actions Plaintiffs allege Defendants, under the color of California's density bonus laws, subjected Plaintiffs or caused Plaintiffs to

be subjected to the deprivation of their rights and privileges as secured by the constitution and fair housing laws. 42 USC §1983 (2021).

159. As discussed above, all Defendants violated Plaintiffs' equal opportunity rights to engage in and negotiate the sale of an affordable home when the Plaintiffs were the target group for which the density bonus law was created. All Defendants, intentionally and with no regard, violated Plaintiffs' civil rights under the color of the state law. The City publicly clothed itself under state law stating it was required to allow the developers to discriminate against Plaintiffs and sell to an investor and that their hands were tied by the Cal. Gov't. Code 65915, when they in fact were not and instead had a duty to affirmatively further fair housing.

## III.     Third Cause of Action – Violations of the California Fair Employment and Housing Act (FEHA)

**(Individual Plaintiffs against all Defendants for violation of Cal. Gov't Code §§12900-12996; Cal. Civ. Code §1711; 2 CCR §12005 *et seq.*)**

160. Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

161. Based on Defendants' actions herein alleged, Plaintiffs allege Defendants' discriminated against Plaintiffs and their unlawful conduct adversely affected Plaintiffs' who are protected classes in contravention to Cal. Gov't Code

§§12955 & 12955.8(a) based on their race, sex, marital status, familial status and source of income.

### E. Defendant City of Encinitas' Violations of the FEHA

162.    Plaintiffs allege Defendants' manipulation of the sale to investors through the affordable housing agreements is discriminatory against Plaintiffs as a protected class. The City concocted a practice that enables discriminatory conduct in the sale of affordable homes. Even if viewed as facially neutral, the City's regulatory agreement scheme had a disproportionate adverse impact on Plaintiffs as they were discriminated against in the purchase of both of the affordable homes available to them. Evidence shows the City's majority of the inventory of the affordable single-family homes under the density bonus law are owned by investors as well resulting in a disparate impact on the protected class.  This unlawful scheme violates the spirit of the California Fair Employment & Housing Act and is not supported by any substantial and legitimate nondiscriminatory objectives, in contravention of Cal. Gov't Code §§12955 *et seq*.

163.    By crafting this scheme to benefit the developers and their friends, Defendant City has made home sales opportunities to Plaintiffs unavailable because it allowed for the developers to deny selling a home to Plaintiffs because of their race, marital status, familial status and source of income in violation of Cal. Gov't Code §§12955 *et seq*., and Cal. Gov't. Code §8899.50. City had full knowledge Plaintiffs were in the far minority in Encinitas based on the Census and San Diego

Regional housing data and that Plaintiffs warranted protection for their special fair housing needs. *See* Exhibits E and F.

164.    Plaintiffs allege Defendant City failed their duty to affirmatively further fair housing by failing to provide adequate oversight of the sale of the designated affordable homes pursuant to Cal. Gov't Code 8899.50 and are vicariously liable for their co-defendants actions pursuant to 2 CCR §§12010(b) and 12008(u).  The City approved advertisements used in the sale of the Loden property that resulted in a disparate impact on Plaintiffs and other similarly placed protected persons.  The City unlawfully approved a discriminatory sale where the developers provided different sale terms to the wealthy investor buyers than to Plaintiffs when it had full knowledge Plaintiffs, a protected class, and were qualified buyers. The developers gave different sales prices and terms to the investor buyers than Plaintiffs. City had knowledge that Plaintiffs were target recipients of the affordable home based on statistical data cited in a recent housing study. The City had a duty to review and challenge the developers premature choice and sale to wealthy male investors over Plaintiffs, and failed to do so despite knowing Plaintiffs belong to a protected class. Defendant City's actions and inactions resulted in a discriminatory impact on Plaintiffs in violation of state fair housing laws.

**F.  All other Defendants' Violations of the FEHA**

165.   Plaintiffs allege Defendants' unlawful discriminatory conduct in the marketing and sales of the affordable homes in Encinitas has had a disproportionate adverse effect on Plaintiffs who are protected under the FEHA.

166.   Defendants WPG, Desert Rose, and New Pointe refused to sell to Plaintiffs after the making of a bona fide offer, and refused to negotiate for the sale of the affordable homes because of their sex, marital and/or familial status, race, and source of income in violation of Cal. Gov't Code §§12955 *et seq.*

167.   Defendants made statements and took actions that indicated a preference and limitation based on their race, sex, marital status, familial status and source of income.   They specifically preferred and limited very low-income protected class Plaintiffs from being able to negotiate and purchase the home because they preferred to sell to married wealthy males who could pay with cash, rather than a mortgage. Defendants' conduct was intentional, willful, and made in reckless disregard of the known rights of others.

168.   Defendants WPG and Desert Rose discriminated against Plaintiffs by setting different sales price terms for Plaintiffs from investors.   WPG and Desert Rose told Plaintiffs to list $112,000.00 as their offer price, but sold the home to Santiara/Scramark/Santistevan with Layne-Trujillo's help for $175,000.00.

169.   Defendant New Pointe discriminated against Plaintiffs by refusing to allow Plaintiffs Anderson and Talleys to negotiate and engage in the sale process at

all after they asked to be added to the list of interested buyers and be allowed to apply when the application period opened.

170.    Defendant New Pointe, Marcor, Marquez, and Pacific Sotheby's discriminated against Plaintiffs in the marketing and sales process of the 1412 Mackinnon affordable home. They restricted the applicant pool to cash-only investor buyers unlawfully. The mls listing said that any potential buyer "must rent" for 55 years, precluding anyone that would want to live in it, which is unlawful. They refused to qualify anyone that was not a cash investor buyer against the spirit of the density bonus laws. Defendants conduct was intentional, willful and made in reckless violation of Cal. Gov't Code §§12955 *et seq*. with disregard to the known rights of Plaintiffs.

171.    Defendant New Pointe discriminated against Plaintiff Sorenson in the sale of the home by refusing to allow her negotiate in the sale of the home and disqualifying her when she had been a qualified purchaser based on her sex, marital status, familial status and her source of income. Defendant New Pointe conduct and Spayde's statements demonstrate Defendants did not allow her to participate as a single female household with four children who would use a mortgage to purchase the home, rather New Point sold it to Reed who had a preexisting relationship with Marcor and Marquez. Defendant New Pointe's conduct was intentional, willful and made in reckless violation of Cal. Gov't Code §§12955 *et seq*. with disregard to the known rights of Plaintiffs.

172.  Defendants WPG and Desert Rose created vague non-informative advertisements to cause as minimal a pool of applicants as possible for the 1317 Portola property with all intention to limit and discriminate in violation of Cal. Gov't Code §§12955(c). Defendants' conduct was intentional, willful, and made in reckless disregard of the known rights of others.

173.  Defendants' practices to manipulate the density bonus affordable housing program have had a disproportionately adverse effect on protected classes, and are not otherwise justified by a legitimate rationale, in contravention of Cal. Gov't Code §§12955 *et seq.*

### G. **Defendants Scramark, Santiara and Santistevan and Layne-Trujillo's Violations of the FEHA**

174.  Defendants Santiara, Scramark and Santistevan and Layne-Trujillo violated the FHA when they conspired with WPG and Desert Rose to preclude Plaintiffs from participating in the sale process of the property as described above. Defendants had preexisting business relationship with the developer and sabotaged the Plaintiffs directly by colluding in different sales terms discriminating against Plaintiffs because of their race, gender, marital status, familial status, and source of income in violation of the FEHA.

175.  Defendants Santiara, Scramark and Santistevan violated the FEHA in its refusal to rent 1317 Portola to Plaintiff Anderson because of her marital and familial status in violation of Cal. Gov't Code §§12955 *et seq.*

176.   When Plaintiff Anderson learned Santistevan was the investor who purchased 1317 Portola, she immediately reached out to Santistevan to make a bona fide offer to rent the property from him. On September 20, 2021, months after Santistevan bought the property, he responded to Anderson's offer via email stating "we found a larger family that qualified for the unit, *which is required*." *See* Exhibit O (emphasis added).  He denied her the ability to rent it because she was a single mother with one special-needs child.

177.   As of today's date, months after the sale, the property remained vacant and unoccupied.

178.   Santistevan refused to negotiate in the rental of the property with Anderson, falsely represented the property was not available and had already been rented, and denied Anderson the term, condition and privilege of renting the home because of her sex, source of income, marital status and familial status in violation of Cal. Gov't Code §§12955 *et seq.*

179.   Defendants' conduct was intentional, willful, and made in reckless disregard of the known rights of others.

## H. Defendants Spayde, Reed, and Finance of America Mortgage, LLC's Violations of the FEHA

180.   Defendants Spayde and Finance of America violated the Fair Housing Act in their actions to make unavailable and deny Plaintiffs the ability to negotiate

the sale of 1412 Mackinnon when they refused to qualify her because of race, gender, marital status, familial status and source of income.

181.    Spayde was the lender used by the seller in charge with qualifying all the persons making a bona fide offer for the property. Finance of America is the employer of Victor Spayde and responsible for the actions of its agents. Spayde refused to cross-qualify Plaintiff Sorenson for the purchase of the home, which was disparate treatment of Sorenson and had a disproportionate adverse effect on Sorenson who enjoys the protections under the FHA. Spayde as a creditor is required to treat all applicants equally and he failed to do so.  Yet, the seller was only accepting cash offers. Spayde's role was a farce. There was no loan qualification process because the seller was only accepting cash offers.  Reed, also an employee of Finance of America in the same branch as Spayde, had a pre-existing relationship with the seller's agents.  His cash offer was given preferential treatment discriminating against Plaintiffs from participating in the sale of the Mackinnon home, which benefitted and enriched Reed. Reed's co-worker at Finance of America, Spayde, failed to qualify Plaintiff Sorenson for the home when she made a bona fide offer for the home because of her race, gender, marital status, familial status and source of income in violation of Cal. Gov't Code §§12955 *et seq*., and 2 CCR §§12060.2 and   12010 (2021). Defendants' conduct was intentional, willful, and with reckless disregard of the known rights of others.

## IV.    **Fourth Cause of Action – Violations of Unruh Civil Rights Act**

**(Individual Plaintiffs against All Defendants for violation of Cal. Civ. Code §§ 51, 52)**

182.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

183.    Plaintiffs are protected classes under the Unruh Civil Rights Act. Plaintiffs Anderson and Sorensen are very low-income homebuyers who are single mothers of minor children and their source of income to purchase a home was a mortgage. Plaintiffs Talley and Talley are very low-income homebuyers who are Hispanic and Asian, and their source of income to purchase a home is a mortgage.

184.    Defendants' injured Plaintiffs in violation of the Unruh Civil Rights Act, Cal. Civ. Code §§51, 52. Specifically, Defendants denied Plaintiffs full and equal accommodations, advantages, facilities, privileges, or services because of their race, sex, marital status, familial status, source of income, and income level by failing to act in good faith and discriminating against Plaintiffs in the marketing and sale of two affordable homes in Encinitas.

185.    Defendant City concocted a scheme through their regulatory agreements to allow developers to discriminate against the Plaintiffs based on their gender, race, marital status, familial status and source of income and very low-income characteristic. Defendant City failed to provide required oversight in the marketing and sale of the two homes to ensure Plaintiffs were not discriminated

against and to affirmatively further fair housing. Plaintiffs have suffered harm, and Defendants' conduct was a substantial factor in causing the harm suffered by Plaintiffs.

186. All other Defendants violated Plaintiffs civil rights under the Unruh Act. Plaintiffs allege that Defendants denied Plaintiffs full and equal accommodations, advantages, facilities, privileges, services because of their race, gender, marital status, familial status, source of income and their very low-income level. Defendants denied, incited or aided in the denial of full and equal accommodations, privileges, services and advantages to Plaintiffs to be able to negotiate in the sale and rental of an affordable home because of their race, gender, marital status, familial status, source of income and their very low-income level.

187. Defendants WPG, Desert Rose, Santiara, Scramark and Santistevan conspired to deny Plaintiffs the full and equal opportunity to negotiate in the sale of 1317 Portola. Plaintiffs were given different terms of the sale and Defendants negotiated secretly behind closed doors and closed the deal prior to the application period Plaintiffs were subject to. Defendants motivating reason for their conduct was Plaintiffs race, gender, marital status, familial status, source of income and very low-income level. Plaintiffs were harmed and Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

188. Defendant Scramark and Santistevan denied Plaintiff Anderson the full and equal opportunity to negotiate in the rental of 1317 Portola. The substantial

motivating reason for Defendants conduct was because of Anderson's sex, marital status, and familial status. Plaintiff Anderson was harmed and Defendants' conduct was a substantial factor in causing Plaintiff's harm.

189.   Defendants New Pointe, Marquez/Marcor/Pacific Sotheby's, Spayde, Finance of America and Reed discriminated against Plaintiffs as protected classes and very low-income families, denying them the full and equal opportunity to negotiate in the sale of 1412 Mackinnon. Plaintiffs were automatically disqualified from the sale process by Defendants and Defendants sold the home to Reed who had a preexisting relationship with the seller's agents.  These actions disallowed Plaintiffs full and equal accommodations, advantages, privileges and services because of their race, sex, marital status, familial status, source of income and very low-income level. Plaintiffs were harmed and Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

190.   All Defendants are liable for their intentional, willful unlawful conduct in violation of Cal. Civil Code §§51 and 52.

**V.**   **Fifth Cause of Action – Violations of Unfair Competition**

**(Individual Plaintiffs against All Defendants except the City of Encinitas for violating Cal. Bus. & Prof. Code §§ 17200 et seq., 17500; Cal. Finance Code §22161)**

191.   Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

192.   Plaintiffs allege Defendants and their agents or affiliates have engaged in unlawful, unfair and fraudulent business acts and practices to exclude Plaintiffs from participating in the sale of designated affordable homes in Encinitas in violation of the Unfair Competition ("UCL") and affiliated laws.

193.   WPG and Desert Rose conspired with Santiara, Scramark, and Santistevan and Layne-Trujillo in a back door deal for different price and sales terms unfairly against Plaintiffs. These actions were intentional, willful and fraudulent and with complete disregard for Plaintiffs rights under the California Business & Professional Code and the Civil Codes. Cal. Bus. & Prof. Code §§ 17200 et seq., 17500.

194.   New Pointe, Marquez/Marcor/Pacific Sotheby's, Spayde, Finance of America and Reed engaged in unfair practices by failing to consider Plaintiffs in the sale of the Mackinnon property. New Pointe, Marquez/Marcor/Pacific Sotheby's marketed and steered the exclusion of Plaintiffs from being a buyer of the property, instead selling to Reed who had a preexisting relationship with the seller's agent. Reed had an unfair advantage with his affiliations to the seller's agents and the preferred lender (his employer and coworker). Spayde and Finance of America engaged in unfair practices by refusing to cross-qualify Plaintiff Sorenson allowing Reed to gain a unfair advantage over Plaintiffs. Spayde and Reed, licensed mortgage lenders, have a special duty not to engage in unfair practices under California Finance Laws. Cal. Finance Code §22161. Defendants

actions were intentional, willful and/or with complete disregard for Plaintiffs rights under the California Business & Professional Code and Civil Code. Cal. Bus. & Prof. Code §§ 17200 et seq., 17500 and the California Finance Law.

195.    Defendants WPG and Desert Rose's conduct in the advertisement of the sale of 1317 Portola was unfair, deceptive, or misleading. Cal. Gov't Code §17500 (2021). The advertisement was explicitly unfair, deceptive and misleading as it did not directly indicate a home was "for sale." It failed to have the "for sale" words as typically used in the normal course of business of selling a home. It failed to provide the approved sale price of $112,000.00. It was listed in a legal notice section of small newspaper rather than in a designated real estate section of local papers as all other real estate listings are. These acts were intentional to deceive the public to minimize the applicant pool of very low-income applicants so that Defendants could fraudulently sell the home to Defendant Santistevan and Layne-Trujillo.

196.    Defendants New Pointe, Marquez/Marcor/Pacific Sotheby's conduct in the advertisement of the sale of 1412 Mackinnon was unfair, deceptive, or misleading. Cal. Gov't Code §17500 (2021). The mls listing was explicitly unfair, and misleading as it stated the home "must be rented" for a period of 55 years. Defendants also promoted Spayde and Finance of America as the preferred lender for prospective buyers to use and that he was to cross-qualify them, but that was not true as they were only entertaining cash offers. These acts were intentional to

deceive the public to minimize the applicant pool of very low-income applicants so that Defendants could sell the home to Defendant Reed.

197.    Defendants' conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers, and the harm to Plaintiffs outweighs any conceivable utility from Defendants' actions.

198.    Defendants' unlawful and unfair business practices, including discriminating against Plaintiffs, have caused economic injuries to Plaintiffs, including requiring them to go to great lengths to find information about applying for the affordable homes, requiring them to scramble and take time off work to rapidly gather requisite documents and information so they can timely submit an application during a minute time frame, and to be excluded from the Encinitas residential home market.    Plaintiffs have suffered embarrassment, anxiety and depression as a result of Defendants' conduct.

## VI.    Sixth Cause of Action – Claim for Deceit and Fraud

**All Individuals against All Defendants except the City of Encinitas, Reed, Spayde, and Finance of America Mortgage for violating Cal. Civ. Code §§1708, 1710, 1711, 1750 *et seq*.**

199.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

200.    Defendants all conspired to unfairly mislead and deceived Plaintiffs. Defendants intentionally engaged in the deceit to present an image that they were

entertaining offers from Plaintiffs, when in fact they were working behind the scenes to sell to a pre-determined non-qualified investor buyer. Cal. Civ. Code §§1708, 1709, 1710, 1711, 1750 *et seq.*

201. Defendants WPG and Desert Rose engaged in deceit and misrepresentation when they sold the home to Scramark/Santistevan on March 17, 2021, before the close of the application period, and while they continued to allude Plaintiffs that they were being considered as possible buyers "at the top of the list" well into April 2021. This is an intentional and direct violation of Cal. Civil Code §§1708, 1709, 1710, 1711, 1770, 1780.

202. Defendants Scramark and Santistevan engaged in further unfair, deceptive and misleading business practices by refusing to negotiate in the rental of 1317 Portola with Plaintiff Anderson in violation of Cal. Civil Code §§1708, 1709, 1710, 1711, 1770, 1780. Defendants misrepresented to Anderson that 1317 Portola had already been rented and was not available when it had not been rented and was vacant. Defendants unfairly, deceptively misled Anderson that she was not allowed to rent 1317 Portola because she was single and had one child. These acts by Defendants were intentional so that Defendants did not have to rent the home to Anderson and could house an associate/friend/family member in the home. This is an intentional and direct violation of Cal. Civil Code §§1708, 1709, 1710, 1711, 1770, 1780.

203.    Defendants Marquez/Marcor/Pacific Sotheby's engaged in deceit and misrepresentation when they concealed from Plaintiff Sorenson the fact that New Pointe accepted an offer. Five minutes after they changed the status on the mls to "under contract", they engaged in communications with Sorenson's agent about how to fill out the application process, and not a word that an offer had been accepted.  Sorenson was frantically trying to get her documentation in order and present a valid qualified offer for 1412 Mackinnon before the 5pm expiration on September 26, 2020.   However, Defendants already accepted Reed's offer and changed the listing to under contract before the expiration and before they engaged in further discussion with Sorenson about the application process. This was material information Sorenson was not privy to and was material as to the availability and desirability of the property. Defendants failed to notify Sorenson at all about the property being bought until October 13, 2020. Defendants actions were intentional and direct violation of Cal. Civil Code §§1708, 1709, 1710, 1711, 1770, 1780.

## VII.    Seventh Cause of Action – Claim for Negligence

### (All Individuals against All Defendants except the City of Encinitas for violating Cal. Civ. Code §§ 1708 and 1714)

204.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

205.    Defendants injured the Plaintiffs by want of ordinary care or skill in the marketing and sale of the affordable homes in violation of Cal. Civ. Code §§1708 and 1714.

206.    Defendants were negligent because, as stated above, (1) Defendants violated the federal Fair Housing Act, the California Fair Employment and Housing Act, and the Unruh Civil Rights Act, Cal. Civ. Code §51; and California's Unfair Competition Laws & Financing Law (2) Defendants statutory violations were a substantial factor in bringing about the harm suffered by Plaintiffs, including both economic loss and emotional distress; (3) the FHA, FEHA, Unruh Civil Rights Act and California Unfair Competition & Financing Laws were intended to prevent actions like those of Defendants; and (4) the FHA, FEHA, the Unruh Civil Rights Act and California Unfair Competition & Financing Laws were intended to protect persons like Plaintiffs.

207.    Defendants also were negligent because as stated above, (1) they failed to exercise ordinary skill or care[9] to prevent or remedy the discriminatory and unfair practices required in the course of their business, and (2) Defendants' failure to exercise ordinary skill or care was a substantial factor in bringing about the harm suffered by Plaintiffs, including both economic loss and emotional distress.

---

[9] Defendants are subject to a heightened standard of care as they are all licensed real estate brokers, mortgage lenders and real estate developers.

## VIII.  Eighth Cause of Action – Violation of Equal Credit Opportunity Act ("ECOA")

**(Plaintiff Sorenson against Defendants New Pointe, Marquez, Marcor, Pacific Sotheby's, Spayde, and Finance of America Mortgage, LLC for violations of 15 USC §1691; 12 CFR §1002 *et seq.*)**

208.   Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this Complaint.

209.   Plaintiff Sorenson alleges Defendants New Pointe, Marquez/Marcor/Pacific Sotheby's, Spayde and Finance of America unlawfully discriminated against Sorenson with respect to her credit application on the basis of her race, sex, marital status, familial status and source of income. 15 USC §1691 (2021). New Pointe, Marquez/Marcor/Pacific Sotheby's, Spayde and Finance of America are all "creditors" as defined within 12 CFR §1002.2(l).

210.   Plaintiff Sorenson asserts Spayde and Finance of America unlawfully refused to process Sorenson's credit application and denied her the right to participate as a qualified purchaser of 1412 Mackinnon. New Pointe, Marquez/Marcor/Pacific Sotheby's instructed Spayde of Finance of America that no buyers that could potentially live in the home could be qualified.  Defendants pre-determined Sorenson's application to be unqualified for unlawful reasons and rejected her application based on her race, sex, marital status, familial status and source of income. New Pointe, Spayde and Finance of America imposed different

pre-conceived assumptions on the term of Sorenson's offer to purchase the home versus Spayde's coworker and Finance of America's employee, Kenneth Reed. New Pointe, Marquez/Marcor/Pacific Sotheby's knew that Sorenson was a qualified buyer as either an owner-occupant or as an owner with a tenant in place, but they discriminated against Sorenson. Spayde and Finance of America discouraged Sorenson directly from applying for credit to purchase the 1412 Mackinnon home when Spayde failed to respond to her application to qualify and take any required actions under the ECOA. 12 CFR §1002.9 (2021). New Pointe, Marquez/Marcor/Pacific Sotheby's knew or had reasonable notice of Spayde and Finance of America's unlawful actions as they knew Sorenson had submitted an offer to purchase the home, and Spayde and Finance of America intentionally avoided and failed to qualify her. This is a direct violation of the ECOA. 12 CFR §§1002.1-1002.4 (2021).

## **RELIEF SOUGHT**

211.   Plaintiffs seek the following from this Court:

    a.   The issuance of a declaratory judgment in favor of Plaintiffs;

    b.   Awarding actual and compensatory damages Plaintiffs incurred as a result of Defendants' actions;

    c.   Awarding punitive and exemplary damages to Plaintiffs pursuant to 42 U.S.C.§3613(c) and Cal. Civ. Code §§1780, 3294, and any other relevant law authorizing such relief;

d.  Awarding costs and attorney fees to Plaintiffs pursuant to 42 U.S.C. §3613, Cal. Civ. Proc. Code §1021.5, Cal. Civ. Code §§1717, 1942.5(h), and any other relevant law authorizing such relief; and

e.  Granting such further relief as the Court may deem just.

## **JURY TRIAL DEMANDED**

212.   Plaintiffs demand a jury on all issues so triable.

Dated: January 14, 2022                 Respectfully Submitted,

                                        By:     s/ Anna M. Hysell
                                                Anna M. Hysell
                                                Attorney for Plaintiffs